**INTERNATIONAL LADIES' GARMENT WORKERS' UNION and Joint Board of Cloak, Suit, Skirt and Reefer Makers' Unions, Plaintiffs,**

v.

**SHIELDS & COMPANY, Robert E. Schweser Company, Leonard L. Lawrence, and Parsons, Brinckerhoff, Quade & Douglas, Defendants.**

United States District Court
S. D. New York.

Sept. 21, 1962.

146

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiffs. Jay H. Topkis, Gerald D. Stern, Allan Blumstein, New York City, of counsel.

Watters & Donovan, New York City, Gross, Welch, Vinardi & Kaufman, Omaha, Neb., for Robert E. Schweser Company and Leonard L. Lawrence. Edward V. Gross, Gerald E. Bodell, New York City, Walter C. Reid, Brooklyn, N. Y., of counsel.

DIMOCK, District Judge.

In this action based on allegedly false representations said to have been relied on in the purchase of $250,000 face amount of 4% Bridge Revenue Bonds of the Bellevue Bridge Commission (Nebraska), defendants Robert E. Schweser Company and Leonard L. Lawrence move to set aside the service of the summons on them and to dismiss the complaint for failure to state a claim on which relief can be granted.

The motion to set aside the service of the summons is based, in general, on the facts that it was not served within the state of New York and that the action involves bonds of a public agency and thus is not within provisions of law permitting extraterritorial service.

The motion to dismiss the complaint is based upon the ground (1) that the right of action asserted is statutory and that the statute does not apply to bonds of a public agency and (2) that plaintiffs claim only as assignees of the purchaser who relied on the allegedly false statements and that the right of action by the purchaser who thus relied is not assignable.

### The Motion to Set Aside Extraterritorial Service

The complaint contains two separately stated "causes of action". The first states in paragraph 1:

"This action arises under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, and under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule X–10B–5 promulgated by the Securities and

Exchange Commission thereunder, as hereinafter more fully appears."

The second "cause of action" realleges every paragraph of the first except the above quoted paragraph 1 and adds two paragraphs which do not invoke special statutory provisions.

We thus have an obviously deliberate attempt to pursue a right of action based on a federal statute and another based solely on common law. Whatever might have been the law prior to the adoption of the Federal Rules of Civil Procedure, the citation of statutes is proper in pleading. See for example Form 2 of the forms of pleading annexed to the Rules.

One of the statutes cited in the "first cause of action" is the Securities Exchange Act of 1934. Section 27 of that act provides that in a suit to enforce liability under it the summons may be served wherever the defendant may be found. 15 U.S.C. § 78aa. The act creates liability with respect to sales of bonds, even though they be bonds of public instrumentalities of a state, and process in suits to enforce liability with respect to sales of such bonds may be served extraterritorially. Baron v. Shields, D.C.S.D.N.Y., 131 F.Supp. 370, 1954; Greenwich Savings Bank v. Shields, D.C. S.D.N.Y., 131 F.Supp. 368, 1955; Thiele v. Shields, D.C.S.D.N.Y., 131 F.Supp. 416, 1955.

Service was therefore proper insofar as the assertion of the federal right of action is concerned.

The assertion of the common law right of action does not enjoy the benefit of any express statutory permission for extraterritorial service. If extraterritorial service is to be permitted it must be because of its assertion in the same suit as the federal right of action. Can a plaintiff obtain this advantage for a common law right of action by the simple expedient of asserting it in the same suit with a federal right of action which a statute says may be enforced by extraterritorial service?

The first question is whether the common law right of action may be asserted at all in the federal court. That question was long ago answered in the affirmative by Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, which involved rights of action based on copyright infringement and unfair competition. There Mr. Justice Sutherland said, p. 246, 53 S.Ct. p. 589:

"The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the non-federal *ground;* in the latter it may not do so upon the non-federal *cause of action.*

"The case at bar falls within the first category. The bill alleges the violation of a single right, namely, the right to protection of the copyrighted play. And it is this violation which constitutes the cause of action."

This jurisdiction of a common law right of action, which the federal court possesses under the rule of Hurn v. Oursler when it is asserted with a federal right of action to vindicate a violation of the same right, has come to be called "pendent". The theory has been refined by the adoption of the Federal Rules of Civil Procedure which abolished the term "cause of action" and, to express the conception expressed by Mr. Justice Sutherland by "cause of action", substituted the word "claim".

In a case like Hurn v. Oursler the subject matter is a single claim although there are two rights of action created by different sovereignties. The federal court, having been given jurisdiction of the claim, has jurisdiction of the whole

subject matter, and, provided it can obtain jurisdiction over the person of the defendant as to the rights of action involved, can enforce both rights of action.

In the instant case the complaint charges the violation of a single right, i. e. the right that there should be no misrepresentation by the seller in connection with a certain sale of securities. This court has, therefore, pendent jurisdiction of the subject matter including both the federal and the common law rights of action.

The next question is whether the doctrine of pendent jurisdiction should be extended to include pendent jurisdiction of the person. By the Securities Exchange Act Congress made unlawful certain practices in the nature of misrepresentation and in substance empowered the District Courts to entertain suits based on the commission of those unlawful acts. It is only as to those suits that Congress authorized extraterritorial service. Ought the courts to extend this congressional authorization so as to cover rights of action which are based not on the commission of acts made unlawful by Congress but on the commission of acts made unlawful by state law?

To extend the rule of pendent jurisdiction to jurisdiction over the person calls into play different considerations. The doctrine of Hurn v. Oursler flows of necessity from the conception that there is but a single claim where a single right has been violated. Where the subject matter is a single claim and the court has jurisdiction of the claim it has jurisdiction of the whole subject matter. As we see here, however, there may be plural rights of action to enforce a single claim. As far as the court's jurisdiction of the subject matter is concerned, it has jurisdiction to enforce all those rights of action. The court's jurisdiction over the person, though, is usually limited by Rule 4(f) to jurisdiction over those who can be served within the state. While Congress has made an exception to that in the case of the federal right of action asserted here so far as the common law right of action is concerned, the limitation to those who can be served within the state still stands. There is no such compulsion of logic here as exists in the case of jurisdiction over the subject matter; a claim for the violation of a single right is indivisible but the rights to enforce it are divided at their creation into different rights of action.

The result accords with what would be the natural intent of Congress. When Congress subjected those sued for a violation of the Securities Exchange Act to the necessity of responding to service made outside the state it would normally hesitate to force their appearance far from home to defend against demands under laws the degree of severity or intricacy of which were unknown to Congress.

As held by Judge Van Dusen in Lasch v. Antkies, D.C.E.D.Pa., 161 F.Supp. 851, the case of Hurn v. Oursler applies only to the question of jurisdiction and not to service of process. The moving defendants who were not served within the state cannot be held to answer the charge based on the common law.

There remains the problem of expressing this result formally and effectively. The natural result of my decision would seem to be the quashing of service upon the moving defendants insofar as the asserted common law right of action was concerned and the dismissal as against them of so much of the claim as embodied the common law right of action. Schwartz v. Eaton, 2 Cir., 264 F.2d 195, however throws considerable doubt on the effectiveness of such a determination. That case is substantially indistinguishable on the facts from this and a determination such as above suggested was made by the District Court. The Court of Appeals dismissed an appeal from the judgment of dismissal on the ground that Rule 54(b) F.R.Civ.P., "cannot be used to appeal a part of a single claim or, as here, to test a single legal theory of recovery" (p. 196). While the judgment of the District Court was thus left standing, two of the judges of the Court of Appeals took occasion to say that the action of the District Court was a nullity

and that the trial judge would be obligated, pursuant to Rule 54(c), to grant the parties the relief to which they might prove themselves entitled.

If my decision is a nullity as against the power of the trial judge under Rule 54(c), that power can be restricted by an order made at pre-trial under Rule 16 limiting the issue between plaintiffs and the extraterritorially served defendants to their liability under the "first cause of action" in the complaint. What plaintiffs would be prevented from pursuing in the District Court by such an order would not be merely a legal theory but a right of action created by the laws of another sovereign. Cf. Padovani v. Bruchhausen, 2 Cir., 293 F.2d 546; Circuit Judge C. E. Clark, To an Understanding Use of Pre-Trial, 29 F.R.D. 454, 461.

### The Motion to Dismiss the Complaint for Failure to State a Claim on Which Relief May be Granted.

I shall consider only the attack on the first "cause of action" since defendants have not been properly brought into court to answer the second, as I hold above, and are therefore not concerned with it.

Defendants' point that the statutory provisions under which the first "cause of action" is brought do not apply to sales of bonds of a public agency has been answered in holding above that the Securities Exchange Act applies to such sales and permits extraterritorial service in actions based on misrepresentation in such sales.

There remains the question whether plaintiffs' right of action is assignable.

Plaintiffs' chain of title as alleged in the complaint is as follows:

On November of 1950 and in February and March of 1951, the Retirement Fund of the Coat and Suit Industry in the New York Metropolitan Area, hereinafter the Retirement Fund, purchased $430,000 principal amount of the bonds here involved from defendant Shields & Company and from Gregory Harrington & Co., Inc. In making these purchases the Retirement Fund relied upon representations alleged to have been made by the defendants. The complaint then alleges:

"In November, 1952, the Retirement Fund duly assigned to [plaintiffs] all its rights, title and interest in and relating to $250,000 principal amount of said bonds."

Of course by a mere assignment of securities the assignee does not acquire any and all rights of action that the assignor may have had against the person from whom he bought. One who has been defrauded by the sale of goods to him of a value less than they would have had if as represented retains the right of action for the amount of his damage unaffected by his parting with the goods.

The claim here, however, is that the right of action was assigned along with the bonds. Hence the question whether a right of action under the Securities Exchange Act of one injured by misrepresentation is assignable.

The precise question has been decided by Judge Forman (then sitting in the District Court) in Mills v. Sarjem Corp., D.C.N.J., 133 F.Supp. 753. He there said (p. 761):

"It is further contended by these defendants that the action is penal in nature and as such cannot survive the death of a party thereto. However, 15 U.S.C.A. § 78bb clearly limits recovery under any section of the 1934 Securities Exchange Act to the actual damages sustained by a plaintiff. This relief appears to be remedial and actions for similar damages have been held to be assignable and capable of survival. See Auslen v. Thompson, 1940, 38 Cal.App.2d 204, 101 P.2d 136; Spiller v. Atchison, Topeka & Santa Fe Ry. Co., 1920, 253 U.S. 117, 135, 40 S.Ct. 466, 64 L.Ed. 810."

Wogahn v. Stevens, 236 Wis. 122, 294 N.W. 503, 133 A.L.R. 1033, is cited by defendants as to the contrary. It was cited to Judge Forman in Mills v. Sarjem.

**150**

I accept Judge Forman's reasoning and conclusion.

The motion to dismiss the "first cause of action" is denied.

Settle order on notice.