**INDEPENDENT INVESTOR PROTEC-TIVE LEAGUE, in behalf of its members, et al.**

**v.**

**Stuart T. SAUNDERS et al.**

**Civ. A. No. 71–971.**

United States District Court,
E. D. Pennsylvania.

Oct. 16, 1974.

I. Walton Bader, Bader & Bader, New York City, Henry Wessel, Wessel & Carpel, Philadelphia, Pa., for plaintiffs.

Michael A. Cooper, Sullivan & Cromwell, New York City, for defendant First Boston Corp.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is one of the many lawsuits presently before us which have their origin in the events surrounding the financial collapse of the Penn Central Transporta-

tion Company ("Transportation Co.").[1] Plaintiffs have filed a lengthy amended complaint in which they allege that at various points along Transportation Co.'s ride to reorganization proceedings, various defendants violated various provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. Defendant First Boston Corporation ("First Boston") has filed a motion to dismiss the six counts of the amended complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction, pursuant to F.R.Civ.P. 12(b)(6) and 12(b)(1), or alternatively for summary judgment pursuant to F.R.Civ.P. 56.

I. *Motion to Dismiss Plaintiff Independent Investor Protective League for Lack of Standing*

The Independent Investor Protective League ("the League") is an "unincorporated association of investors * * * dedicated to the protection of the independent investor (individuals rather than banks, trust companies and other institutions)." [Amended Complaint ¶¶ 1 and 2.][2] Plaintiffs' counsel has stipulated that the League does not itself own any of the securities which are the subject of this lawsuit.[3] Nowhere in the amended complaint is it alleged that the League has ever owned, purchased or sold any of the relevant securities. There are only allegations that some of its members own certain of the securities.

First Boston has moved to dismiss the League, arguing that the League lacks standing to prosecute on its own behalf any of the claims set forth in the amended complaint and that it lacks standing to assert claims on behalf of its members who as individuals may have standing to sue under the securities laws. Plaintiffs appear to contend that while the League concededly has no cause of action of its own, the fact that some of its members have been "adversely affected" by defendants' conduct gives the League standing to sue on their behalf.

We have been cited to and found no precedent directly on point.[4] However, in support of their proposition, plaintiffs have cited a number of cases involving organizations' standing to assert constitutional claims or to contest administrative action on environmental

---

1. It is, however, separate from the cases which has been transferred to this court by the Judicial Panel for Multidistrict Litigation pursuant to 28 U.S.C. § 1407 which comprise M.D.L. Docket No. 56.

2. According to the League's constitution, a copy of which is attached to plaintiffs' answers to defendants' interrogatories, membership is open to all individuals who hold any security issued by any business organization. The League's constitution authorizes its board of directors to institute legal proceedings if "the interests of the membership or any public interest is adversely affected."

3. After a pretrial conference held on January 24, 1972, counsel for plaintiffs and counsel for the several defendants placed a number of stipulations on the record. The following colloquy took place:

   "MR. HARKINS [counsel for defendant Hornblower & Weeks-Hemphill Noyes, against whom plaintiffs subsequently chose not to proceed] : As to Independent Investor Protective League, can it be stipulated that the League, which is I believe an unincorporated association—

   "MR. BADER [counsel for plaintiffs] : Yes.

   "MR. HARKINS : —owns no Penn Central Securities of any kind, whether the Pennco debentures which are the subject of [Counts] 3 and 4, or the other securities which are the subjects of the several other counts.

   "MR. BADER : So stipulated. But the members of the League do own such securities." Tr. at 33.

4. Plaintiffs have referred us to two recent decisions, Independent Investor Protective League v. S. E. C., 495 F.2d 311 (C.A. 2, 1974), and Gordon v. New York Stock Exchange, 498 F.2d 1303 (C.A. 2, 1974), which they seem to think quite relevant to this case. Those decisions, however, have nothing whatever to do with the question at hand and require no discussion here.

questions. We find none of them apposite here.

■ Under certain circumstances rights which belong to individuals cannot be adequately protected solely by means of lawsuits brought by the injured persons. Where that is the case, courts have permitted organizations to sue on behalf of those whose rights have been infringed. In NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), for example, the Court held that the NAACP had standing to sue because compelling individual NAACP members to assert their claim that a state court may not constitutionally compel disclosure of NAACP memberships "would result in nullification of the right at the very moment of its assertion." 357 U.S. at 459, 78 S.Ct. at 1170. Similarly, the Second Circuit in Norwalk Core v. Norwalk Redevelopment Authority, 395 F.2d 920 (C.A. 2, 1968), held that the issue of the plaintiff associations' standing should be resolved by the district court's determination of "whether there is a compelling need to grant them standing in order that the constitutional rights of persons not immediately before the court might be vindicated," and remanded the case to the district court with instructions to decide whether "it is only the association plaintiffs which can perform this function." 395 F.2d 937–938.

■ Here, the situation is quite different. Individual League members who have been injured by misconduct actionable under the securities laws are perfectly free to sue on their own behalf.[5] They may sue individually or attempt to represent a class. There is no danger whatever that the rights of those individuals will not be protected if they are required to bring their own lawsuits.

The availability of the class action device similarly insures that the rights of investors not immediately before the court may also be protected. There is also no possibility that the rights those who have suffered harm seek to assert will be nullified by their assertion.

■ The cases[6] plaintiffs cite in which associations have been granted standing to seek judicial review of administrative action affecting the environment have no relevance here. The statutes under which those cases arose use language such as "adversely affected by agency action" (Administrative Procedure Act § 10(a), 5 U.S.C. § 702) to define those persons who may seek judicial review of an agency determination. Private damage actions under the securities laws are available to persons who have been injured in ways and under conditions prohibited by the language of the statutes. Those who bring damage actions for violations of the securities laws must meet the standing requirements of the sections under which suit is brought, which without exception require something more than that a person be "aggrieved" or "adversely affected" by a defendant's conduct.

■ It is one thing to say that an organization may have standing to seek judicial review of administrative action if its members are adversely affected by the agency determination, see Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). It is quite another to hold that an organization which has itself suffered no harm and cannot bring a lawsuit on its own behalf may nevertheless bring a private damage action and ultimately be recompensed for injuries it has not sustained, simply because it alleges that some of its members have been harmed by de-

5. The League members whose names appear in the caption of this case have apparently done so.

6. Sierra Club v. Morton, 405 U.S. 727, 92 S. Ct. 1361, 31 L.Ed.2d 636 (1972) ; Environ-

mental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970) ; Izaak Walton League of America, Inc. v. St. Clair, 313 F.Supp. 1312 (D.Minn.1970).

fendants' acts. Such a conclusion is as remarkable as it is untenable and we reject plaintiffs' strained analogy.

In sum, then, we think it preferable to confer standing to sue for damages under the securities laws on those who have suffered some actionable harm. The League has not sustained such an injury and has shown absolutely no reason why the rights of those who have cannot be vindicated without the League's presence. The League will therefore be dismissed from this lawsuit.

## II. *Motion to Dismiss Count I*

The named plaintiffs in Count I are Richard A. Gordon, who is identified only as president of the League and is not alleged ever to have owned, purchased or sold the stock of the Transportation Co. or its predecessors; and Philip Levine, who is alleged to own two shares of Penn Central common stock which he acquired in its pre-merger incarnation as one share of New York Central Railroad common stock. Count I is brought on behalf of plaintiff Levine individually and as a class action on behalf of a class consisting of "the stockholders of the former New York Central Railroad Company and Pennsylvania Railroad Company who were defrauded by reason of the merger of the two railroads into Pennsylvania New York Central Transportation Company and had the value of their stock thereby substantially reduced." [Amended Complaint, ¶ 7(a).] The .claims of Count I are asserted under §§ 11, 12 and 17 of the Securities Act of 1933 and §§ 9 and 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5.

Plaintiffs' entire complaint, and particularly Count I, is so rambling and diffuse that it is difficult to discern its substance. However, a liberal reading of Count I discloses allegations that: (i) false and misleading information was disseminated to the shareholders in connection with the 1968 merger of the Pennsylvania and New York Central Railroads;[7] (ii) false and misleading statements were made in connection with the 1969 reorganization of the merged company which created the Penn Central Company and Penn Central Transportation Company;[8] (iii) dissemination of false and misleading annual reports for the years 1968 and 1969 and a false and misleading proxy statement and letter in 1970; (iv) misuse of funds by various former Penn Central officers and directors; and (v) misappropriation and mismanagement of Transportation Co. funds in connection with Penn Central Company's program for diversification into non-railroad business.

First Boston moves to dismiss Count I on the ground that what it states amounts to no more than corporate mismanagement and hence alleges no violations of the securities laws. In the alternative, it seeks dismissal on the ground that even if violations of the securities laws are stated, none is stated against First Boston.

It is clear that "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1972). Much of what is alleged in Count I appears to resemble. internal corporate mismanagement rather than conduct prohibited by § 10(b). However, "a complaint should not be dismissed for failure to state a claim unless it appears be-

---

7. Plaintiffs mistakenly allege that the merger "went into effect on January 12, 1962." ¶ 17. The shareholders of the two railroads approved the merger plan in 1962 and 1966 but the merger did not actually take place until 1968.

8. There is no need to discuss these transactions in detail. The background is set forth at length in our M.D.L. Docket No. 56 opinions at 347 F.Supp. 1327 (E.D.Pa.1972) and 335 F.Supp. 1026 (E.D.Pa.1971).

yond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102, 2 L.Ed.2d 80 (1957). We cannot say that there is no set of facts which might entitle plaintiffs to the relief they seek under § 10(b) and Rule 10b–5 in Count I. Nor do we think summary judgment appropriate on the basis of the complaint and plaintiffs' answers to defendants' interrogatories, which if anything raise rather than remove genuine issues of material fact, although it may well be that after further discovery First Boston might profitably renew its motion for summary judgment.

■ First Boston also argues that whatever plaintiffs may allege against other defendants in Count I, they allege no actionable misconduct by First Boston. While some of the allegations in Count I have a certain gossamer quality, the liberal reading required in the context of a motion to dismiss discloses certain allegations which, given a conceivable set of facts, might support plaintiffs' claims for relief against First Boston. In ¶ 16, for example plaintiffs allege that the 1968 merger of the New York Central and Pennsylvania Railroads was "conducted under the direction of" First Boston and other defendants. Although it is not clear precisely what, if anything, this means, a set of facts is imaginable which would link First Boston to the issuance of the various allegedly false and misleading statements in connection with the merger.

■ We reach a similar conclusion with respect to First Boston's contention that there are no allegations in Count I of actionable misconduct against it "in connection with the purchase or sale of" a security, as there must be for recovery under § 10(b) and Rule 10b–5. Birnbaum v. Newport Steel, 193 F.2d 461 (C.A. 2), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); Landy v. FDIC, 486 F.2d 139 (C.A. 3,

1973). The 1968 merger is, as First Boston recognizes, at least arguably a sale of a security. S. E. C. v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Plaintiffs' allegation that the 1968 merger was conducted under the direction of First Boston, coupled with the allegation that at least plaintiff Levine owned New York Central shares which were exchanged pursuant to the merger, is enough to lead us to deny the motion to dismiss.

We should note that we sympathize with First Boston's difficulty in successfully attacking this haphazard complaint at this stage of the proceedings, but to grant their motion would run counter to the letter and spirit of Rule 12(b)(6). It might well be, however, that new motions after further discovery would be fruitful.

### III. *Motion to Dismiss Count II*

Count II reasserts the allegations of Count I, this time as a "stockholders derivative complaint, in behalf of stockholders of NEW YORK CENTRAL RAILROAD COMPANY and of PENN CENTRAL COMPANY" for waste and mismanagement of the assets of "said corporation" which allegedly resulted in substantial losses to the corporations and ultimately sent Transportation Co. into reorganization. [Amended Complaint, ¶¶ 47 and 49].

Plaintiffs have made no demand on the directors (or, apparently, the trustees of Transportation Co.) as required by F.R.Civ.P. 23.1 and seek to excuse their failure to do so as follows:

> "No demand was heretofore made to correct said mismanagement because the officers of the said corporations were also in control of the same and directly participated in acts involved therein." [Amended Complaint ¶ 48.]

■ The directors of a corporation ordinarily decide whether and how to assert rights belonging to the corporation. In order that they may be given the chance to perform this function, Rule

23.1 requires that a shareholder seeking to vindicate a right on behalf of the corporation first demand that the directors take the action he desires. Demand may be excused where it would be futile, but a shareholder who fails to make a demand on the directors must, under the language of Rule 23.1, allege "with particularity" his reasons for not making the effort. *See* In Re Kauffman Mutual Fund Actions, 479 F.2d 257 (C.A. 1, 1973); Landy v. FDIC, *supra*; Note, Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit, 73 Harv.L.Rev. 746 (1960).

Plaintiffs' statement in ¶ 48, even when read liberally in conjunction with the complaint as a whole, falls far short of the mandates of Rule 23.1. The allegation in ¶ 48 is general and conclusory and thus fails to satisfy the Rule's particularity requirement. "Instead of being 'a statement of appropriate and convincing facts' that a demand would have been futile, O'Connor v. Rhodes, 65 U.S.App.D.C. 21, 79 F.2d [146] at 148, it is merely a vague, conclusory statement." Landy v. FDIC, *supra*, 486 F.2d at 148.

The reasons for the particularity requirement are especially evident in this case. Plaintiffs merely allege that the "officers" of the corporation were "in control" and participated in the alleged wrongdoing. They make no mention at all of the Trustees of Transportation Co. They fail to recognize that since Transportation Co. entered into reorganization proceedings, new directors have been elected to the board of Penn Central Company, none of whom has been named as a defendant here or had anything to do with the allegedly wrongful acts. In the actions consolidated in M.D.L. 56 we have previously given Penn Central Company and the Trustees of Transportation Co. exclusive control of the vari-

ous derivative actions brought on their behalf. In Re Penn Central Securities Litigation, 335 F.Supp. 1026 (E.D.Pa. 1971). We thought then that there was no reason to conclude that the Trustees and Penn Central Company would fail to prosecute those claims with vigor; the subsequent conduct of that litigation has proved us right. For the reasons noted in support of our conclusion in those cases we find plaintiffs' reasons for failing to make a demand insufficient, even if those reasons were stated with the particularity required by Rule 23.1, which they are not.

IV. *Motion to Dismiss Counts III and IV*

The gravamen of Count III is that false and misleading statements appeared in an offering circular for 9% Sinking Fund Debentures of Pennsylvania Company ["Pennco"] Due 1994, allegedly in violation of § 11 of the Securities Act of 1933. The only plaintiff in Count III is Israel Patents Corporation, which owned no Pennco debentures at the time this suit was originally filed but purchased one debenture in July 1971.[9] As First Boston points out, this purchase occurred one month after First Boston had moved to dismiss the original complaint, thirteen months after Transportation Co. had filed for reorganization, and nineteen months after Pennco had issued the allegedly false and misleading offering circular.

First Boston's main ground for moving to dismiss this count appears to be that the purchase of the one debenture was made "for the transparent purpose of establishing some colorable basis for the assertion of a claim." [Defendant's Brief at 19.] Despite the apparently suspicious timing of the purchase, and despite the equally apparent improbability of proving a claim under § 11, we

9. The date of purchase appears in plaintiffs' answers to defendants' Interrogatory 10. Interrogatory Answer 11 reveals that Israel Patents Corporation is a New York corporation formed for unspecified purposes by plaintiffs' attorney and members of his family, who are also its officers and directors.

cannot on the scanty state of the record grant a motion to dismiss or for summary judgment. Further motions at a later date, accompanied by appropriate affidavits, might again be advisable.

Count IV reasserts the allegations of Count III as a claim sounding in fraud and deceit brought under the doctrine of pendent jurisdiction. Since we shall not dismiss Count III, we must also refuse to dismiss Count IV.

### V. *Motion to Dismiss Counts V and VI*

Count V incorporates the factual allegations of Count I, *supra,* and purports to state a claim for relief under §§ 11 and 17 of the Securities Act, §§ 9 and 14 of the Exchange Act, the Investment Advisers Act, and the Trust Indenture Act. It is brought on behalf of bondholders of the Pennsylvania and New York Central Railroads. Defendants are alleged to have misused the railroads' assets, reduced the value of the bondholders' securities, and "unload[ed]" those securities on an unsuspecting public while they were making inordinate profits for themselves.

▆▆▆▆ It is unclear precisely who is a plaintiff in Count V.[10] What is clear is that none of the named plaintiffs is asserting rights of his or its own.[11] Rather, plaintiffs seek to assert "the rights of their predecessors in title," ¶ 81.

▆▆▆▆ Plaintiffs' theory is a novel one. It is not asserted that any plaintiff ever received an express assignment of choses in action possessed by their predecessors, whose identities are unknown. Plaintiffs contend, however, that whatever causes of action may have accrued to a previous bondholder who

owned the bonds at the time of defendants' alleged misconduct were automatically assigned to the current bondholder when he made his purchase. According to plaintiffs' theory, the simple act of buying a bond, without more, also purchases all rights of action that any prior holder might have had.

▆▆▆▆ This contention is entirely without any support in precedent and, we think, totally without merit. Choses in action may be transferred from one party to another by express assignment. International Ladies' Garment Workers Union v. Shields & Co., 209 F.Supp. 145 (S.D.N.Y.1962); In Re Penn Central Transportation Co., 337 F.Supp. 791 (E.D.Pa.1972) (Fullam, J.). While a security is of course transferred by its sale, the causes of action belonging to a prior holder do not pass with the transfer of the security. The provisions of the securities acts relied upon here create rights of action on the part of investors who have been harmed by the misconduct of others. Those rights belong to the *persons* who have suffered injury. They do not attach for all eternity to the security itself, to pass forever from the person who has been harmed to be asserted by others who have not. To adopt plaintiffs' extraordinary theory would be to deprive injured persons of their rights and give their causes of action to one who has suffered no injury himself but who simply has been shrewd or lucky enough to have put his hands on a security that once belonged to a person who was defrauded.

Count V will be dismissed, as will Count VI, the pendent analogue of Count V sounding in common law fraud and deceit.

10. For example, Jack Rosen and Tony Sansome are nowhere named in the complaint but are named as plaintiffs in the Answer to defendants' Interrogatory 1. This, of course, is insufficient to add them as parties.

11. It is apparent from Interrogatory Answer 14 that they do not do so because no plaintiff in the complaint was a bondholder at the time of the wrongdoing alleged in Count V.