772 F.2d 1486
 54 USLW 2232, Fed. Sec. L. Rep. P 92,306
 In re NUCORP ENERGY SECURITIES LITIGATION,
Stanford PHELPS and Robert Gulick, in behalf of themselves
and in behalf of the 19 3/4%-10% Delayed Convertible
Debentures of Nucorp Energy, Inc., (an Ohio Corporation),
Graphics Club, Inc., (a New York Corporation), Private Water
Supply, Inc., (an Illinois Corporation), and Herbert Lust,
individually, Plaintiffs-Appellants,
v.
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF
CHICAGO, a National Banking Association, Defendant-Appellee.
 No. 83-6468.
 MDL No. 514.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 8, 1985.
Decided Oct. 3, 1985.
 
 Bader & Bader, I. Walton Bader, White Plains, N.Y., for plaintiffs-appellants.
 J. Anthony Sinclitico, III, Gibson, Dunn & Crutcher, San Diego, Cal., Theodore A. Livingston, Jeffrey M. Strauss, Doreen A. Gagnon, Mayer, Brown & Platt, Chicago, Ill., Leonard B. Simon, Milberg Weiss, Bershad Specthrie & Lerach, San Diego, Cal., for defendant-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before GOODWIN, WALLACE and REINHARDT, Circuit Judges.
 GOODWIN, Circuit Judge.
 
 
 1
 Plaintiffs (the Phelps Committee) appeal the judgments dismissing their claims of violation of federal securities laws and their pendent state law claims. We affirm the district court in all respects.
 
 
 2
 This action is related to a class action brought against Continental Illinois National Bank and Trust Company of Chicago, et al. Continental served as an indenture trustee for convertible debentures issued on October 1, 1981, by Nucorp Energy, Inc. Members of the class bought debentures between October 1, 1981, and January 20, 1982, on which date Nucorp made a public announcement of its financial difficulties. The class has alleged that Continental knew or had reason to know that the disclosure documents accompanying the debenture issue were materially misleading.
 
 
 3
 The Phelps Committee represents purchasers who bought Nucorp debentures from class members after January 20, 1982. The Committee filed an action against Continental in October 1982 in federal district court for the Northern District of Illinois. The case was transferred by the Judicial Panel on Multidistrict Litigation to the Southern District of California where there were pending the class action and another action filed by different plaintiffs, involving the same transactions. The Committee's complaint, as amended after the transfer, pleaded a federal cause of action for breach of trust under the Trust Indenture Act, 15 U.S.C. Secs. 77aaa-77bbbb, and pendent jurisdiction of state law claims for breach of fiduciary duty, willful misconduct, fraud and deceit and negligence. Having been excluded from the class of direct purchasers, the Phelps Committee does not claim to have been injured by virtue of its own reliance on misleading disclosures. Rather, it argues that when it purchased the debentures from members of the class it automatically acquired the sellers' causes of action for violation of federal securities laws and related state law claims.
 
 
 4
 In August 1983 Continental moved for dismissal of the amended complaint for failure to state a claim for which relief could be granted, Fed.R.Civ.P. 12(b)(6), and lack of subject matter jurisdiction over the state law issues. Fed.R.Civ.P. 12(b)(1). The substance of the 12(b)(6) motion was twofold. Continental argued that the Phelps Committee had not demonstrated that Continental had violated the Trust Indenture Act, or committed state law transgressions. The bank also argued that because the Committee could not have relied on Continental's role in the issuance of the debentures, the Committee could have suffered no injury and thus had no cause of action. At a hearing on the motion, Continental took the modified position that the court should retain jurisdiction to decide the pendent state law claims. The district court granted the motion as modified. It first dismissed the federal cause of action on the merits and then, after separate consideration, dismissed the state claims on the merits.
 
 
 5
 The question before us is not whether Continental committed the alleged violations of state and federal law. Our inquiry here is whether, under federal or state law, the direct purchasers' rights were automatically transferred to the subsequent purchasers. In the present procedural context we must decide whether the district court correctly retained jurisdiction over the state law claims and, if so, whether it correctly disposed of the state law claims. We must also consider the effect of federal law on the alleged federal claims.
 
 JURISDICTION
 
 6
 We are met by the threshold question, not addressed by the parties but a question of which we are always mindful, whether we have jurisdiction over the Phelps Committees' claims. To the extent that the Committee alleges that Continental Bank made misleading statements in connection with Nucorp's debenture issue, the Trust Indenture Act expressly provides jurisdiction. 15 U.S.C. Sec. 77www. Thus, we do not need to decide whether other sections of the Trust Indenture Act provide implied causes of action and therefore permit the assertion of federal subject matter jurisdiction. The section 77www claim provides us with jurisdiction to proceed. Even if the Committee's other claims do not arise under the Trust Indenture Act, they could be heard as pendent state claims as we conclude below.
 
 FEDERAL CLAIMS
 A. The Applicable Law
 
 7
 The Phelps Committee urges us to apply state law in deciding whether there was automatic assignment of the class members' federal causes of action. We find no reason to apply state law to this question.
 
 
 8
 The Trust Indenture Act is part of the large and complicated body of federal law covering securities transactions. It constitutes Title III of the Securities Act of 1933, 15 U.S.C. Secs. 77aaa-77bbbb. See 53 Stat. 1149 (1939). As a securities statute, it is designed "to vindicate a federal policy of protecting investors." Lowry v. Baltimore & Ohio Railway Co., 707 F.2d 721, 727 (3rd Cir.) (en banc) (Garth, J., concurring) (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976) ), cert. denied, --- U.S. ----, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983). A claim which arises under a federal statute and implicates federal policy is appropriately decided under federal law. Accord Huddleston v. Herman & MacLean, 640 F.2d 534, 557 & n. 40 (5th Cir.1981) (federal law applies to claims under Rule 10b-5 because the action is implied in a federal statute), aff'd in part and rev'd in part on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); In Re Fine Paper Litigation, 632 F.2d 1081, 1090 (3rd Cir.1980) (status of claims held under federal antitrust law is a question of federal law).
 
 
 9
 The possibility that federal law should apply in the exact context presented here--determining whether a federal cause of action runs with ownership of a security--was carefully considered and accepted by two members of the Lowry en banc panel. Lowry, 707 F.2d at 726-28 (Judges Garth and Sloviter concurring). Moreover, federal law has been relied upon by all of the federal district courts which have considered the possibility of an automatic transfer of a cause of action under securities law. See Rose v. Arkansas Valley Environmental & Utility Authority, 562 F.Supp. 1180, 1188-89 (W.D.Mo.1983); Independent Investor Protective League v. Saunders, 64 F.R.D. 564, 572 (E.D.Pa.1974); International Ladies' Garment Workers' Union v. Shields & Co., 209 F.Supp. 145, 149 (S.D.N.Y.1962); Mills v. Sarjem Corp., 133 F.Supp. 753, 761 (D.N.J.1955).
 
 
 10
 The Phelps Committee argues that under Sec. 16.04 of the trust indenture agreement the parties agreed to apply state law to problems arising under the indenture. Section 16.04 provides that "[t]his Indenture and each Debenture shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of said State." This choice-of-law clause is irrelevant with respect to the assignability of federal causes of action upon sales between the class members and the Committee. In order to determine whether an assignment by operation of law occurred, we must interpret and examine the contracts of sale, not the indenture. Only after it has been determined who possesses the cause of action need the indenture be construed. Because of the case law and the strong federal policies surrounding assignment of a federal securities law claim, we hold that federal law governs the assignment of claims under the Trust Indenture Act.
 
 B. Transfer of Claims
 
 11
 The Trust Indenture Act provides a cause of action for persons who purchase securities issued under an indenture if the purchaser relies on misleading statements or omissions and suffers actual damages. 15 U.S.C. Sec. 77www. It may provide other private causes of action as well. The statute provides nothing for subsequent purchasers to whom no misrepresentations were made directly or indirectly and to whom no statutorily provided cause of action was expressly assigned. We find no more reason to provide a remedy to these subsequent purchasers than we could find to provide a remedy for individuals who had purchased stock directly from an issuer before a misleading disclosure was made. See Williams v. Sinclair, 529 F.2d 1383, 1389 (9th Cir.1975), cert. denied, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); Raschio v. Sinclair, 486 F.2d 1029, 1030 (9th Cir.1973). Accord Shivers v. Amerco, 670 F.2d 826, 831 (9th Cir.1982) (minority shareholders cannot claim injury under securities laws if they sell stock after deception has ceased).
 
 
 12
 A cause of action arising from reliance on misrepresentation is personal to those persons who relied; it does not follow the security to remote purchasers who had no basis for reliance. Saunders, 64 F.R.D. at 572. Thus, the Phelps Committee purchasers, who acquired their securities after Nucorp's public disclosure, were not automatically assigned the class members' federal causes of action when they made their purchases. If we held otherwise, we would remove the remedy from those to whom the statute provides it, i.e., those who were defrauded, by gratuitously giving it to those who were not defrauded and have suffered no injury under the securities law. See id. See also Lowry, 707 F.2d at 729-31 (Garth, J., concurring;) id. at 731-32; (Adams, J., concurring) (no automatic assignment of federal securities claims). But see id. at 742-43 (Gibbons, J., dissenting); id. at 746-47 (Seitz, J., dissenting).
 
 EXERCISE OF PENDENT JURISDICTION
 
 13
 Contrary to the position taken by the Phelps Committee, dismissal of the federal claims on the merits did not deprive the district court of pendent jurisdiction to hear the state claims. Pendent jurisdiction exists where there is a sufficiently substantial federal claim to confer federal jurisdiction in the first place, and a "common nucleus of operative fact" between the state and federal claims. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); see Hagans v. Lavine, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974). The "common nucleus of operative fact" between the federal and state claims urged by the Phelps Committee could scarcely be more obvious. Both sets of claims arise out of exactly the same facts with regard to both the debenture issue and the transactions between the direct and subsequent purchasers. The more difficult question is whether there was a substantial federal claim at the outset.
 
 
 14
 The ultimate lack of merit of the federal claim does not mean that the claim was not substantial, for purposes of conferring jurisdiction. C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Sec. 3564, at 73 (2d ed. 1984) ("Jurisdiction is not lost because the court ultimately concludes that the claim is without merit"). See Green v. Ferrell, 664 F.2d 1292, 1294 (5th Cir.1982); Enders v. American Patent Search Co., 535 F.2d 1085, 1087-88 (9th Cir.), cert. denied, 429 U.S. 888, 97 S.Ct. 242, 50 L.Ed.2d 170 (1976). "The practical importance of the distinction [between merit and jurisdiction] is that if the federal claim is substantial enough to invoke federal jurisdiction, the court has power to exercise pendent jurisdiction over [state] claims ... also ... asserted in the complaint...." C. Wright, A. Miller & E. Cooper, Sec. 3564 at 74-75 (footnote omitted).
 
 
 15
 A federal claim is insubstantial to begin with if it is " 'absolutely devoid of merit' " or " 'obviously frivolous' ". Hagans, 415 U.S. at 536-37, 94 S.Ct. at 1379 (citations omitted). At the time it was filed, the Phelps Committee's claim was of questionable substance. At least one federal district court already had cast doubt on a similar claim holding that a cause of action for misrepresentation can be, but is not necessarily, assigned with the assignment of a security. Shields & Co., 209 F.Supp. at 149. A more pointed rejection of the Committee's theory was set forth in Saunders, 64 F.R.D. at 572.
 
 
 16
 We note further that after the Committee filed this action, two other courts rejected variations of the same claim. Rose, 562 F.Supp. at 1189; Lowry, 707 F.2d at 729-31 (Garth, J., concurring) id. at 731-32, (Adams, J., concurring). Two dissenting opinions in Lowry, however, have lent faint hope to the Committee's position. Id. at 742-437, (Gibbons, J., dissenting), id. at 746-47, (Seitz, J., dissenting).
 
 
 17
 In light of the paucity of law on this question before the action was filed, and the support, fragile though it is, provided by the Lowry dissents, we agree with the district court that the Phelps Committee's federal claim was substantial enough to confer jurisdiction. We do not understand the Committee to argue otherwise, because to do so would be to assume the ludicrous position of asserting the invalidity of its own federal claim.
 
 
 18
 Having correctly decided that it had pendent jurisdiction of the Phelps Committee's state law claims, the district court was not obliged to exercise that jurisdiction; the decision to do so was within its discretion. Hagans, 415 U.S. at 545-46, 94 S.Ct. at 1383 (citing Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139); Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir.1985); Aydin Corp. v. Loral Corp., 718 F.2d 897, 903-04 (9th Cir.1983). Such discretion is not abused if retention of the state claim is justified by judicial economy, convenience and fairness to the litigants. Hagans, 415 U.S. at 546, 94 S.Ct. at 1383.
 
 
 19
 All three concerns are met here. The district court was eminently familiar with the facts and issues underlying the Phelps Committee's state claims and was right in not imposing unnecessarily on a state court or on Continental a repetition of pleadings, motions, discovery and other pre-trial proceedings. See Aydin Corp., 718 F.2d at 904. These are exactly the kinds of claims which "without regard to their federal or state character, ... would ordinarily be expected [to be tried] in one judicial proceeding." Gibbs, 383 U.S. at 725, 86 S.Ct. at 1138.
 
 
 20
 Moreover, trial in state court of the state issues would expose Continental to double liability if the state court were to find Continental liable to the Phelps Committee, and the district court were to find Continental liable to the class action plaintiffs. The potential for double liability might prove disruptive to the ongoing litigation between the class action plaintiffs and Continental--particularly to settlement efforts in that action. See Lowry, 707 F.2d at 743 (Gibbons, J., dissenting).
 
 
 21
 Finally, we consider the context in which the Committee now wishes to take some of its claims to another forum. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 375-76, 98 S.Ct. 2396, 2403-04, 57 L.Ed.2d 274 (1978) (noting, in regard to ancillary jurisdiction, that "in determining whether jurisdiction over a nonfederal claim exists, the context in which the nonfederal claim is asserted is crucial"). We are aware of three cases (in addition to this one) in which counsel for the Phelps Committee has orchestrated this unlikely theory of recovery. Only one of these resulted in a published decision. Saunders, 64 F.R.D. 564. We note the existence of the two unpublished decisions because of their connections to the case before us now. One, in which the plaintiffs alleged injury under Rule 10b-5, was dismissed by the same district court which dismissed the complaint in the Committee's case. One was a state court action in which not only were the plaintiffs represented by counsel for the Committee, but one of the plaintiffs in the state action was at one time a plaintiff in the Committee's action. By refusing the Committee's counsel and his clients yet another arena for their efforts, the district court exercised not only sound, but commendable discretion.
 
 STATE CLAIMS
 
 22
 The parties disagree about what state law will govern the question whether the class members' state law claims were automatically assigned to the Phelps Committee.[1] Under Klaxon Co. v. Stentor Electric Manufacturing, Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), we would normally apply the choice-of-law rules of California, because the district court hearing the claims was sitting in California. In this case, however, we must apply the choice of law rules of Illinois because the claims were originally filed in district court in Illinois before they were transferred to California by the Judicial Panel on Multidistrict Litigation. Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 406 (2d Cir.1975); In re "Agent Orange" Product Liability Litigation, 580 F.Supp. 690, 695 (E.D.N.Y.1984); In re Air Crash Disaster at Boston, 399 F.Supp. 1106, 1108 (D.Mass.1975); In re Crash Disaster near Hanover, 314 F.Supp. 62, 63 (J.P.M.D.L.1970). See Van Dusen v. Barrack, 376 U.S. 612, 638-39, 84 S.Ct. 805, 820, 11 L.Ed.2d 945.
 
 
 23
 Illinois has adopted the choice-of-law rules set forth in the Restatement (Second) of Conflicts. Florida Risk Planning Consultants Inc. v. Transport Life Insurance, 732 F.2d 593, 595 (7th Cir.1984) (Illinois contracts law). See Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593 (1970) (tort law); Schulze v. Illinois Highway Transportation Co., 97 Ill.App.3d 508, 53 Ill.Dec. 86, 423 N.E.2d 278 (1981) (same); Champagnie v. W.E. O'Neil Construction Co., 77 Ill.App.3d 136, 32 Ill.Dec. 609, 395 N.E.2d 990 (1979) (contract law); Ford v. Newman, 64 Ill.App.3d 528, 21 Ill.Dec. 283, 381 N.E.2d 392 (1978) (trust law).
 
 
 24
 The trust indenture for the Nucorp securities provides in section 16.04 that the indenture shall be construed under New York law. As we said above, however, the provisions of the indenture have no relevance to the question whether the contracts of sale between the class members and the Phelps Committee operated to assign certain rights of action. We must construe the contracts of sale between the class members and the Phelps Committee, rather than the indenture.
 
 
 25
 The interpretation of a contract that includes an assignment of intangible rights is governed by Sec. 209 of the Restatement (Second) of Conflicts. The law to be applied is "the local law of the state which, with respect to the particular issue, has the most significant relationship to the assignment and the parties." Id. In this case, the "particular issue" is whether the various New York state law causes of action asserted by the Phelps Committee were automatically assigned by the sale of the underlying securities.
 
 
 26
 The members of the Phelps Committee appear to be residents of New York and Connecticut. The Nucorp securities they own were purchased at various times and undoubtedly from people who live in a number of different states. Nucorp is headquartered in California, and the Phelps Committee filed its lawsuit in Illinois. Thus, a wide range of states have at least some "relationship" to the issue of assignment. The one common geographical factor, however, is the fact that every single sale is claimed to have automatically assigned various New York state law causes of action. While California has a deep interest in the assignment of California state law causes of action, and Illinois has an equal interest in the assignment of Illinois state law causes of action, neither California nor Illinois would have much reason to concern itself with New York law causes of action. Because New York law creates the cause of action itself, New York has the most significant relationship to the question of how the cause of action is to be assigned. Accordingly, we conclude that under Illinois choice-of-law rules, New York law determines whether the contracts of sale between the class members and the Phelps Committee operated to automatically transfer the New York law causes of action.
 
 
 27
 The New York courts have already spoken to the issue of automatic assignment of state law claims. In Licht v. Donaldson, Lufkin & Jenrette Securities Corp., No. 24560/82, slip op. (N.Y.Sup.Ct. Sept. 1983), aff'd mem., 100 A.D.2d 987, 474 N.Y.S.2d 1004, appeal denied, 63 N.Y.2d 608, 472 N.E.2d 1044 (1984), the court held that state law claims were not automatically transferred when the underlying security was sold. The Licht rationale is equally persuasive here. If causes of action were automatically transferred, defendants could be subject to double liability, and the transferees would recover damages even though they had suffered no injury, while the injured transferors would recover nothing. Accordingly, we conclude that under New York law the Phelps Committee did not acquire the New York law causes of action when they acquired the securities. The Phelps Committee's state claims must be dismissed.
 
 
 28
 Affirmed.
 
 
 
 [1]
 For this portion of the opinion, we assume without deciding that whatever federal causes of action may exist under the Trust Indenture Act do not preempt the state law claims involved here