**AMERIFIRST BANK, a Federal Savings Bank, and AmeriFirst Development Corporation, Plaintiffs,**

v.

**Thomas R. BOMAR, Carlos Garcia–Velez, Robert W. Benner, Richard M. Hattler, Richard A. Davenport, William W. Cole, Jr., James C. Carr, Deloitte & Touche, and Ernst & Young, Defendants.**

No. 90–0429–CIV.

United States District Court,
S.D. Florida.

Jan. 17, 1991.

Andrew N. Bollmer, Washington, D.C., Hugo L. Black, Jr., Miami, Fla., for plaintiffs and counter-defendants Teti & Brody.

Aubrey V. Kendall, Miami, Fla., Thomas J. O'Connell, Carl D. Liggio, New York City, for defendant Ernst & Young.

David C. Pollack, Robert W. Turken, Alex P. Rosenthal, Miami, Fla., for defendants Carr and Cole.

Bruce W. Greer, Laura Besvinick, Valerie Shea, Miami, Fla., for defendant Deloitte & Touche.

Richard M. Hattler, Miami, Fla., for defendant Hattler.

Don Beverly, West Palm Beach, Fla., for defendant Davenport.

## ORDER

HOEVELER, District Judge.

THIS CAUSE comes before the Court on Defendants' motions to dismiss the Amended Complaint filed by AmeriFirst Bank ("AmeriFirst"), a federally chartered sav-

ings and loan, and AmeriFirst Development Corporation ("ADCO"), a wholly owned service corporation subsidiary of Ameri-First. Defendants move to dismiss on several grounds. First, they argue that the Court does not have subject matter jurisdiction over the claims asserted under Rule 12(b)(1) and Rule 25(c) of the Federal Rules of Civil Procedure. Second, several of Defendants urge that various counts of the Amended Complaint fail to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Finally, Defendants claim that Plaintiffs have not plead fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Finding that the Court lacks subject matter jurisdiction over Counts VI–IX, XI, XII, XX, and XXII, these Counts are dismissed without prejudice. However, the motions to dismiss Counts I–V, X, XIII–XIX, XXI and XXIII are denied.

## BACKGROUND

The origin of the current action is five separate class actions filed on behalf of AmeriFirst's shareholders in November and December of 1989 and January of 1990 against AmeriFirst, its former managers and Deloitte & Touche ("Deloitte") (the successor of the Bank's former outside accounting firm). The class actions allege violations of the federal securities laws[1] in connection with the issuance of false and misleading statements to AmeriFirst's shareholders and the public.

In December, 1989, the shareholders agreed to settle their claims against Ameri-First. The settlement agreement requires AmeriFirst to bring suit against its officers, directors, and outside accountants. The agreement further provides that the Class will assign AmeriFirst an undivided twenty (20) percent interest in the securities claims it alleges in the class action, after recovery of certain litigation expenses and excluding recovery from a certain insurance policy and, in exchange, AmeriFirst is to assign the Class an undivided twenty-five (25) percent interest in its claims, after recovery of specified amounts. In the event that any of the claims are not assignable, the agreement states that the Class will pay AmeriFirst twenty (20) percent of its recovery and AmeriFirst will pay the Class twenty-five (25) percent of its recovery from the assigned claims.

As consented to in the settlement agreement, AmeriFirst and ADCO filed a complaint in February 1990 against their former officers and directors,[2] Deloitte, Ernst & Young ("Ernst") (successor of the former outside auditor of ADCO), and James Carr, a Florida builder, alleging certain breaches of fiduciary duty. After Court approval of the settlement terms, including the cross-assignment provision mentioned above, on April 17, 1990, the plaintiffs amended their complaint to include violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Each of the defendants has moved to dismiss the Amended Complaint on the grounds that the Court lacks subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In support of their motions, Defendants argue that the Court cannot assert jurisdiction over the federal securities claims, because the claims are invalidly assigned as a matter of law and because the assignment is champertous and collusive, in violation of 28 U.S.C. § 1359.[3] They

---

**1.** Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, 15 U.S.C. § 78j(b) (1982), 17 C.F.R. § 240.10b–5 (1989).

**2.** The former officers and directors which have been sued are the following: Thomas Bomar, former chief executive officer and charirman of the Board of the Bank and former director of ADCO; Carlos Garcia–Velez, former chief operating officer and director of AmeriFirst and former director of ADCO; Robert Benner, former chief financial officer of the Bank and a former director of ADCO; Richard Hattler, former senior lending officer of the Bank; Richard Davenport, former president and director of ADCO; William Cole, former chief financial officer of ADCO; James Carr, a Florida builder with extensive relationships with the Bank, ADCO, and certain of the defendants.

**3.** Defendants Cole and Carr argue, in addition, that this Court should dismiss the federal securities Counts of the Amended Complaint pursuant to Rule 25(c), Fed.R.Civ.P., as involving duplicative and wasteful litigation, since the Class al-

further assert that the Court lacks subject matter jurisdiction over the breach of fiduciary duty claims as there is no federal common law governing these state law claims.[4] Defendants Bomar, Garcia, Benner, Hattler, and Carr also move to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action for which relief can be granted and under Rule 9(b) of the Federal Rules Civil Procedure for failure to plead fraud and damages with sufficient particularity.

## DISCUSSION

### I. Subject Matter Jurisdiction

#### A. Validity of the Assignment of the Rule 10b-5 Claims

Defendants argue that assignment of the federal securities claims to Amerifirst is invalid as a matter of law. The essence of their argument is that, in order to assert a 10b-5 claim, one must be an actual purchaser or seller of a security who relied to his detriment upon specific misrepresentations or omissions when he bought or sold the security. Since AmeriFirst is neither a purchaser nor seller who relied on the allegedly fraudulent misrepresentations or omissions of the defendants, the defendants conclude that AmeriFirst does not have standing under *Blue Chip Stamps v. Manor Drugstores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), to assert a Rule 10b-5 claim.

 Defendants are correct in their assertion that in order to have standing under § 10(b), a plaintiff must have been a purchaser or seller, and must have been personally defrauded. *Blue Chip Stamps v. Manor Drug Stores, supra; Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). However, as Plaintiffs point out, standing to sue and assignability are distinct issues. Standing requirements define those persons who are entitled to sue for some cognizable injury. A party with standing to sue, however, generally has the power to assign his claim to one who would otherwise lack the requisite standing. Nonassignability is the exception. *Liberty Mutual Insurance Co. v. Davis,* 412 F.2d 475, 484 (5th Cir.1969). Consequently, standing is not necessarily a requirement to bringing a claim which a plaintiff has been assigned. *See e.g., Spiller v. Atchison, T. & S.F. Ry. Co.,* 253 U.S. 117, 40 S.Ct. 466, 64 L.Ed. 810 (1920) (court held that plaintiff who had been assigned claims under the Interstate Commerce Act could sue despite language in the Act that only "injured" persons had standing); *In re Fine Paper Litigation,* 632 F.2d 1081 (3rd Cir.1980) (court upheld the validity of a partial assignment of federal antitrust claims, stating such assignment does not circumvent the standing requirement of *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977)).

 The majority of courts considering whether federal securities claims asserted under § 10(b) are automatically as-

---

ready is asserting these claims in a separate action. Defendants Bomar, Garcia, and Benner argue that the assignment improperly splits a cause of action. Because this Court finds that both Rule 25(c) and the rule against splitting causes of action are procedural rules not implicating the Court's subject matter jurisdiction, those Counts of the Amended Complaint alleging federal securities violations will not be dismissed on these grounds. Moreover, in light of the fact that the class and AmeriFirst have moved this Court to consolidate their actions, these motions are premature and the Court declines to consider them at this juncture.

4. The Plaintiffs allege that the following claims arise under federal common law: Count I against Bomar, Garcia, Benner, Hattler, Davenport, Cole and Carr for breach of fiduciary duty; Count IV against Bomar, Garcia, Benner, and Hattler for breach of duty of loyalty; Count VI against Bomar, Garcia, Benner, Davenport, Cole, and Carr for breach of fiduciary duty of care; Count VII against Bomar, Garcia, Benner, Davenport, Cole and Carr for breach of fiduciary duty of loyalty; Count XV against Deloitte for aiding and abetting breach of fiduciary duties; Count XVI against Deloitte for breach of duties imposed by federal law; Count XX against Ernst for aiding and abetting breach of

signable have held that they are not.[5] *See, e.g., In re Nucorp Energy Securities Litigation,* 772 F.2d 1486, 1490 (9th Cir.1985); *Soderberg v. Gens,* 652 F.Supp. 560, 564 (N.D.Ill.1987); *In re Saxon Securities Litigation,* 644 F.Supp. 465, 470–72 (S.D.N.Y. 1985); *Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1189 (W.D.Mo.1983); *Independent Investor Protective League v. Saunders,* 64 F.R.D. 564, 572 (E.D.Pa.1974). *But see, Hooper v. Mountain States Sec. Corp.,* 282 F.2d 195, 206–07 (5th Cir.1960) (corporation's Rule 10b–5 claim survived corporation's bankruptcy and passed to bankruptcy trustee); *Mills v. Sarjem Corp.,* 133 F.Supp. 753, 761 (D.N.J.1955) (since actions under the Securities Exchange Act of 1934 are remedial in nature and are not penal, decedent's § 10(b) claim survived his death and passed to his executors). Because a § 10(b) claim is personal to the one actually defrauded, these courts have found it inappropriate to permit a claim to travel with the security. As stated by the court in *In re Saxon,* a rule recognizing automatic assignment "would remove the remedy from those to whom the statute provides it . . . by gratuitously giving it to those who were not defrauded and have suffered no injury under the securities law." *In re Saxon,* 644 F.2d at 472. The concern of depriving an injured party of the right to seek a remedy does not arise, however, when the party voluntarily and expressly assigns the securities claim to another. *In re National Smelting of New Jersey, Inc.,* 722 F.Supp. 152, 176 (D.N.J.1989); *Lowry v. Baltimore & Ohio R.R. Co.,* 707 F.2d 721 (3d Cir.) (*en banc*), *cert. denied,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983). In this situation, the victim of fraud willingly relinquishes his statutory cause of action. Thus, unless the assignment of a Rule 10b–5 claim otherwise contravenes the policy considerations behind the standing requirements of *Blue Chip* and its progeny, there is no reason why a party who has been injured by the purchase or sale of a security in violation of Rule 10b–5 should not be entitled to expressly assign his claim in accordance with the general rule that claims are legally assignable.[6]

In *Blue Chip* the Supreme Court held that a party who abstained from purchasing a security because of a seller's misrepresentations could not bring a Rule 10b–5 cause of action. *Blue Chip,* 421 U.S. at 755, 95 S.Ct. at 1934. In its opinion, the Court advanced two important reasons for limiting Rule 10b–5 claims. First, the Court expressed concern that permitting one who had not actually bought or sold a security to maintain a cause of action under Rule 10b–5 would contravene Congress' intent behind the Securities Exchange Act of 1934 by drastically increasing "nuisance" or "strike" suits. *Id.* at 740, 95 S.Ct. at 1927. Second, the Court explained that to allow one alleging that he

---

fiduciary duties; and Count XXI against Ernst for breach of duties imposed by federal law.

5. None of the parties have addressed whether federal or state law governs the assignability issue, perhaps because they found it self-evident that federal law applies. Although there is some dispute on this matter, the majority of authority holds that federal law governs. *See, e.g., Lowry v. Baltimore & Ohio R. Co.,* 707 F.2d 721, 726–28 (3d Cir.1983) (en banc) (J. Garth, concurring); *Western Auto Supply Co. v. Gamble-Skogmo, Inc,* 348 F.2d 736, 739–41 (8th Cir. 1965), *cert. denied,* 382 U.S. 987, 86 S.Ct. 556, 15 L.Ed.2d 475 (1966); *Gardner v. Surnamer,* 608 F.Supp. 1385, 1390 (E.D.Pa.1985) *Mills v. Sarjem Corp.,* 133 F.Supp. 753, 761–62 (D.N.J.1955). This Court finds the reasoning in these opinions convincing and, therefore, follows the majority rule.

6. Few courts since the Supreme Court's opinion in *Blue Chip* have considered whether a federal securities claim under Rule 10b–5 is expressly assignable. In *Lowry v. Baltimore & Ohio R.R. Co.,* 707 F.2d 721 (3d Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983), six of the eight judges sitting *en banc* recognized the validity of an express assignment in dicta. The courts in *In re National Smelting of New Jersey, Inc. Bondholders' Litigation,* 722 F.Supp. 152, 176 (D.N.J.1989) and in *Gardner v. Surnamer,* 608 F.Supp. 1385, 1390 (D.C.Pa.1985), citing *Lowry,* have recognized that an express assignment of § 10(b) claims may be possible. *See also International Ladies Garment Workers Union v. Shields & Co.,* 209 F.Supp. 145, 149–50 (S.D.N.Y.1962) (pre-*Blue Chip* opinion recognizing assignability); Note, *Express Versus Automatic Assignment of Section 10(b) Causes of Action,* 1985 Duke L.J. 813, 823 ("a rule of express assignment is consistent with the purchase-or-sale rule of *Blue Chip.*").

relied on a misrepresentation or omission in deciding not to purchase or sell a security to sue would create substantial evidentiary problems at trial, such as difficulties in proof and almost exclusive reliance on oral testimony. *Id.* at 741–43, 95 S.Ct. at 1928–29.

The concerns expressed in *Blue Chip* are not present in the case at bar. Permitting AmeriFirst a cause of action under Rule 10b–5 based on the express assignment from the settlement class will not encourage "strike" suits. The Class members were purchasers and sellers who allegedly were injured by the fraudulent actions of Defendants. Allowing AmeriFirst to litigate a portion of these claims on the Class's behalf does not make the suit a "nuisance." Nor does an express assignment by one who has standing to sue introduce the evidentiary problems present in *Blue Chip*. In this case, those persons who were allegedly defrauded can testify that they relied on a specific misrepresentation or omission when they bought or sold their securities. Accordingly, since this Court can find no reason why the class members should not be able voluntarily to assign a portion of their claims to AmeriFirst, the assignment is valid.

Defendants argue that even if the assignment is valid as a matter of law, it is both champertous and collusive, in violation of 28 U.S.C. § 1359, and is, therefore, void. Specifically, Defendants contend that, as there is no economic justification for the assignment, it is merely a sham to create federal jurisdiction. The Court rejects both of these contentions and finds that the assignment is valid in all respects.

■ An agreement is champertous when "a person without interest in another's litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation." *Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 603 (5th Cir.), *cert. denied sub nom, Morgan Drive Away, Inc. v. Samford*, 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982). Where the assignment results from a broader transac-

tion and there is additional consideration beyond an agreement to share in litigation proceeds, however, the agreement is not champertous. *Sampliner v. Motion Picture Patents Co.*, 254 U.S. 233, 240, 41 S.Ct. 79, 81, 65 L.Ed. 240 (1920); *Martin*, 665 F.2d at 605–06. AmeriFirst contends that the purpose of the settlement's cross-assignment of claims from the Class to AmeriFirst and vice versa is two-fold. First, Plaintiff explains that the assignment is part of a larger bargained-for exchange to encourage the class members to settle with AmeriFirst. Second, Plaintiff suggests that the exchange of claims will reinforce a necessary alliance of cooperation between AmeriFirst and its shareholders. The Court agrees that there are legitimate reasons for the cross-assignment, which was negotiated as a part of an overall settlement under the direction and with the final approval of this Court. Thus, because the assignment resulted from a broader transaction and did not involve solely an agreement to share litigation proceeds, it is not champertous.

■ 28 U.S.C. § 1359 prohibits a district court from assuming jurisdiction in any civil action "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Because AmeriFirst has set forth valid reasons for the Class's assignment of the Rule 10b–5 claims, the Court rejects Defendants' argument that the assignment is a collusive attempt to manufacture federal jurisdiction under § 1359. *See, e.g., Gilbert v. Wills*, 834 F.2d 935, 936–37 (11th Cir.1987); *Syms v. Castleton Industries, Inc.*, 470 F.2d 1078, 1084 (5th Cir.1972).

### B. *Federal Common Law Cause of Action for Breach of Fiduciary Duty Claims*

■ Plaintiffs contend that in addition to the Court's having subject matter jurisdiction over the federal securities law claims, the Court has federal question jurisdiction over the breach of duty claims asserted in the Amended Complaint. They argue that there is a unique federal interest in ensur-

ing the uniform national regulation of the internal administration and financial integrity of federally chartered and insured savings and loans which demands federal common law enforcement. In support of their position, AmeriFirst and ADCO detail in their memorandum the pervasive federal framework governing the regulation of service corporations of federal thrifts, the management actions of officers and directors, the required treatment of loan losses, and the accounting standards and policies that thrifts, their service corporations and outside auditors must follow.[7] They cite several district court decisions where the court accepted subject matter jurisdiction over federal common law claims asserted by thrifts. *See e.g., Eureka Federal Savings and Loan Ass'n v. Kidwell,* 672 F.Supp. 436 (N.D.Cal.1987); *City Federal Savings and Loan Association v. Crowley,* 393 F.Supp. 644 (E.D.Wis.1975). Although the substantial federal regulation of savings and loans provides a tempting justification for creating federal common law to govern the fiduciary duty claims asserted by the plaintiffs, the Court declines to follow those courts which have chosen to do so.

Those instances in which federal courts may fashion federal common law are "few and restricted." *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963). "Absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 641, 101 S.Ct. 2061,

2067, 68 L.Ed.2d 500 (1981). In addition to these limited areas, the Supreme Court has upheld the formulation of federal common law in the absence of an explicit statutory directive in cases involving areas of "uniquely federal interests." *See e.g., Boyle v. United Technologies Corp.,* 487 U.S. 500, 505, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988); *Texas Industries,* at 640, 101 S.Ct. at 2067. The regulation of federally chartered and insured savings and loan organizations arguably invokes "uniquely federal interests." As pointed out by Plaintiffs, in order to ensure the safety, soundness and financial integrity of the internal management and administration of savings and loan institutions, Congress has enacted a wide range of regulations governing lending practices, the obligations of managers, and the accounting standards and practices that must be followed in the thrift setting. However, despite this comprehensive federal system and the arguable connection between federal regulation and the defendants' alleged breaches of duty based in part on their having violated these regulations, it is questionable whether traditional state law claims, such as those alleged in this case, have a sufficient nexus to the federal government to warrant the creation of a federal common law cause of action. *See FSLIC v. Capozzi,* 855 F.2d 1319 (8th Cir. 1988), *vacated on other grounds,* 490 U.S. 1062, 109 S.Ct. 2058, 104 L.Ed.2d 624 (1989). Where "litigation is purely between private parties and does not touch the rights and duties of the United States, federal law does not govern." *Boyle,* 487 U.S. at 506, 108 S.Ct. at 2515 (*quoting Bank of America Nat. Trust & Sav. Ass'n. v. Parnell,* 352 U.S. 29, 33, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956)).[8]

---

7. The plaintiffs point out that there are three major pieces of legislation which currently govern the thrift industry: the Federal Home Loan Bank Act of 1932 ("FHLBA"), 47 Stat. 725, as amended, 12 U.S.C. § 1421 et seq., the Home Owner's Loan Act of 1933 ("HOLA"), 48 Stat. 128, as amended, 12 U.S.C. § 1461 et seq., and the National Housing Act of 1934 ("NHA"), 48 Stat. 1246, as amended, 12 U.S.C. § 1701 et seq.

8. This case is unlike *Boyle,* where the Supreme Court held that uniquely federal interests were involved. In *Boyle,* the Court found that imposing liability on Government contractors would directly affect the interests of the United States by altering the terms of the Government's contracts—either the contractors would be discouraged from manufacturing the designs specified by the Government or they would raise their prices. *Boyle,* 487 U.S. at 507, 108 S.Ct. at 2515. The Court can think of no similar federal inter-

Moreover, a determination that an area encompasses unique federal interests is not sufficient, by itself, to justify the creation of federal common law. As the Supreme Court explained in *Boyle:* "Displacement [of state law] will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law.' ... or the application of state law would 'frustrate specific objectives' of federal legislation." *Id.,* 487 U.S. at 507, 108 S.Ct. at 2515 (citations omitted). There is no interest in federal uniformity for its own sake. *See In re "Agent Orange" Products Liability Litigation,* 635 F.2d 987, 993 (2d Cir.1980), *cert. denied sub nom, Chapman v. Dow Chemical Co.,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). No such conflict or frustration of objectives exists in this case. Permitting AmeriFirst and ADCO to sue their officers, directors and outside accountants for breach of fiduciary duties under state common law principles will not interfere with the successful functioning of the comprehensive federal scheme governing the savings and loan industry or with the protection of the federal insurance fund even though the law of fiduciary duties may vary somewhat from state to state. *See Capozzi,* 855 F.2d at 1325; *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432 (9th Cir.), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). Rather, the violation of the federal regulations will be some evidence that Defendants breached their fiduciary duties under the substantive principles of state law. As pointed out by the Eighth Circuit in *Capozzi,* "the regulations are 'forward-looking, not retrospective; [and] seek [ ] to forestall insolvency, not to provide recompense after [insolvency] has occurred.' " *Capozzi,* 855 F.2d at 1326 (*citing Touche Ross & Co. v. Redington,* 442 U.S. 560, 570–71, 99 S.Ct. 2479, 2486–87, 61 L.Ed.2d 82, *cert. denied,* 443 U.S. 904, 99 S.Ct. 3096, 61 L.Ed.2d 872 (1979)). Accordingly, the Court finds no

conflict between federal interests and the application of state law sufficient to justify the creation of a federal common law cause of action.

### C. *Dismissal of ADCO's Claims*

▬ As discussed above, the Court declines to create a federal common law cause of action for a breach of fiduciary duty in the savings and loan setting. A finding that the breach of duty claims does not involve a federal question does not defeat AmeriFirst's state law fiduciary duty claims, however. Under the doctrine of pendent jurisdiction, a court may entertain claims not otherwise properly before the court when the claims arise out of a "common nucleus of operative facts" such that one "would ordinarily be expected to try them in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).[9] As the allegations supporting AmeriFirst's Rule 10b–5 claims and those supporting its breach of fiduciary duty, breach of contract, and negligence claims clearly arise out of a similar, if not identical, factual setting, an exercise of pendent jurisdiction in this situation is appropriate.

▬ ADCO, on the other hand, does not have a similar basis of federal question jurisdiction on which to hang its state law claims. Although traditionally courts have exercised their pendent jurisdiction over claims by plaintiffs lacking an independent basis of federal jurisdiction based on the *Gibbs* test and their concerns with conserving judicial resources and avoiding a multiplicity of litigation, *see e.g., Almenares v. Wyman,* 453 F.2d 1075 (2d Cir.1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Hatridge v. Aetna Casualty & Surety Company,* 415 F.2d 809 (8th Cir.1969); *Wilson v. American Chain & Cable Co.,* 364 F.2d 558 (3d Cir. 1966); *Campbell v. B.C. Christopher Securities Co.,* 702 F.Supp. 775 (W.D.Mo. 1988), the Court reluctantly declines to follow those decisions in light of the Supreme

est implicated by imposing liability on officers and directors of federally regulated savings and loans.

**9.** This type of ancillary jurisdiction is referred to as "pendent claim" jurisdiction. *Finley v. U.S.,* 490 U.S. 545, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989).

Court's recent holding in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).[10]

*Finley* involved an action brought against the Federal Aviation Administration under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), in federal court. The plaintiff moved to amend her complaint to include claims against the original state court defendants, as to which no independent basis for federal jurisdiction existed. *Finley, supra* 109 S.Ct. at 2005. The Supreme Court affirmed the court of appeals' refusal to permit the exercise of pendent jurisdiction on the basis that the FTCA, which provides federal courts with exclusive jurisdiction over civil actions on claims against the United States, did not expressly confer jurisdiction over additional claims by or against different parties. *Id.* at 2010. Distinguishing pendent party jurisdiction from the more liberal concept of pendent claim jurisdiction, the Court declared that "with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Id.* at 2007.[11] Although the plaintiff's original claims and the ones she sought to add were factually similar, the Court found this to be of "no consequence since 'neither the convenience of the litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction.' " *Id.* at 2008 (*citing Owen Equip-*

*ment & Erection Co. v. Kroger*, 437 U.S. 365, 376–77, 98 S.Ct. 2396, 2404–05, 57 L.Ed.2d 274 (1978)).

The Court's holding in *Finley* essentially revises the previously recognized statutory test for pendent jurisdiction. This former test permitted the exercise of jurisdiction where the jurisdictional statute at issue did not explicitly or implicitly negate pendent jurisdiction and did not otherwise violate the constitutional limits of Article III. *See, e.g., Kroger,* 437 U.S. at 373, 98 S.Ct. at 2402; *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976).

As in *Finley*, the jurisdictional statute controlling the federal securities claims in this case, 15 U.S.C. § 78aa, explicitly provides for exclusive federal jurisdiction.[12] It does not authorize the federal courts to hear related state law claims nor does it permit the state courts to hear the federal securities claims. Despite the obvious advantages in litigating ADCO's state law claims in the same suit with AmeriFirst's factually similar claims, there is no statutory authorization to do so. Under *Finley*, a desire to promote "judicial economy, convenience and fairness to litigants," *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138, simply is not enough.[13] *See Staffer v. Bouchard Transp. Co., Inc.*, 878 F.2d 638, 643 n. 5 (2d Cir.1989); *Silcox v. CSX Transportation, Inc.*, 731 F.Supp. 503 (N.D.Ga.1990); *Davis v. AUL*, 723 F.Supp. 663 (M.D.Ala.1989); *North Star Contracting Corp. v. Long*

**10.** This type of jurisdiction is referred to as "pendent party" jurisdiction. *Finley*, 109 S.Ct. at 2006. Although pendent party jurisdiction generally involves "jurisdiction over parties [i.e. defendants] not named in any claim that is independently cognizable by the federal court," *id.*, courts have used this term to refer to a situation where a second plaintiff seeks to bring state law claims against a defendant otherwise properly in the case when such claims arise out of facts closely related to those involved in the first plaintiff's case. *See, e.g., Campbell*, 702 F.Supp. at 777. This is the situation in the case at bar.

**11.** The opinion details prior Supreme Court decisions in which the Court chipped away at the validity of pendent party jurisdiction: *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976);

*Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

**12.** The pertinent portion of 15 U.S.C. § 78aa reads as follows: "The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

**13.** The Supreme Court recognized in *Finley* that pendent party jurisdiction may be appropriate "when an additional party has a claim upon contested assets within the court's exclusive control ... or when necessary to give effect to the court's judgment." *Finley*, 109 S.Ct. at 2008 (citations omitted).

*Island R.R. Co.,* 723 F.Supp. 902, 912 (E.D. N.Y.1989). Thus, this Court declines to follow those opinions which have analyzed pendent party jurisdiction as though *Finley* changed nothing. *See, e.g., Rodriquez v. Comas,* 888 F.2d 899 (1st Cir.1989); *Armstrong v. Edelson,* 718 F.Supp. 1372, 1376 (N.D.Ill.1989); *640 Broadway Renaissance Co. v. Cuomo,* 714 F.Supp. 686, 690 (S.D.N.Y.1989).

In light of the above, Counts VI–IX, XI, XII, XX, and XXII of the Amended Complaint asserted by ADCO are dismissed without prejudice.[14]

## II. *Adequacy of the Pleadings*

In addition to their motions to dismiss for lack of subject matter jurisdiction, Defendants Bomar, Garcia, Benner, Hattler, Cole, and Carr have filed motions to dismiss various Counts of the Amended Complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted, and under Rule 9(b), contending that the allegations of common law fraud and securities fraud are not pleaded with sufficient particularity. It is well established that a court may not grant a motion to dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In evaluating a motion to dismiss, the material allegations of the complaint are taken as true and are liberally construed in favor of the plaintiff. *See e.g., St. Joseph's Hosp. v. Hospital Corp. of America,* 795 F.2d 948, 954 (11th Cir.1986). The defendants' arguments for dismissal will be considered in light of this standard.

### A. *The Business Judgment Rule*

Defendants Bomar, Garcia, Benner, and Hattler argue that the allegations against them claiming breach of fiduciary duty (Count I), negligence (Count III), breach of duty of loyalty (Count IV), fraud (Count V),

fraudulent misrepresentation (Count X), and negligent misrepresentation (Count XIII) should be dismissed because, as officers and directors of Amerifirst and ADCO, they are shielded from liability for their actions and decisions by the business judgment rule.

 Under the business judgment rule, officers and directors of a corporation are presumed to have acted properly and in good faith. *International Insurance Co. v. Johns,* 874 F.2d 1447, 1461 (11th Cir. 1989); *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 574 (11th Cir.1988); *Schein v. Caesar's World, Inc.,* 491 F.2d 17, 19 (5th Cir.), *cert. denied,* 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974). Although required to discharge their duties with the diligence and skill of an ordinary prudent person in a like position under similar circumstances, officers and directors "incur no liability to the corporation for issues of business expediency which they resolve through the mere exercise of their business judgment." *Schein,* 491 F.2d at 19. Thus, unless there is a showing of an abuse of discretion, fraud, bad faith or illegality, a court will not substitute its own judgment for that of corporate management. *See e.g., Johns,* 874 F.2d at 1461; *Lake Region Packing Ass'n., Inc. v. Furze,* 327 So.2d 212, 214 (Fla.1976).

 To begin with, it is arguable that a court should not consider whether a defendant's conduct is protected by the business judgment rule on a motion to dismiss. *See FSLIC v. Musacchio,* 695 F.Supp. 1053, 1054 (N.D.Cal.1988); *Gilbert v. Bagley,* 492 F.Supp. 714, 738 (M.D.N.C.1980). However, even if such an inquiry is proper at this stage, it is clear Plaintiff has pled facts sufficient to survive the motions. The Amended Complaint alleges throughout that Defendants acted recklessly, illegally and without the required skill, care and diligence of reasonable persons in similar corporate positions.[15] Moreover, Plaintiff claims that Defendants acted fraudulently,

---

**14.** ADCO joins AmeriFirst in asserting Counts X, XIII, XXI, and XXIII. Although these Counts are not dismissed as to AmeriFirst, ADCO is not permitted to join in the allegations.

**15.** Amended Complaint paragraphs 37–67, 91, 100–110, 119–120, 140–43, 150, 216, 234.

with the intent to conceal material facts from the Board of Directors, and for their own personal gain.[16] If true, these allegations would take the Defendants' management decisions beyond the protection of the business judgment rule.

### B. *Claims Based on Hindsight*

■ Defendants Bomar, Garcia, Benner, and Hattler assert that Plaintiff fails to state a cause of action for breach of fiduciary duty (Count I) and negligence (Count III), because these counts are improperly based on hindsight. Specifically, Defendants contend that the Amended Complaint alleges that the management defendants made commercial real estate loans that proved to be uncollectible simply because they have now been placed in a non-earning status or have been placed in a reserve against possible losses. Defendants claim that the allegations are insufficient in that they do not state which specific loans were improvidently made, whether these exact loans have been placed in a loan reserve or non-earning status, or whether there exists any nexus between the allegedly imprudent lending practices and the making of the allegedly bad loans. In support of their position, Defendants rely on the rule that in determining whether an officer is liable for making a loan, one must view whether the officer made the loan in good faith and in the best interests of the corporation at the time it was made—liability is not based on whether the loan ultimately is uncollectible. *Citing Litwin v. Allen*, 25 N.Y.S.2d 667, 726 (N.Y.Sup.1940); *Gallin v. City National Bank of New York*, 152 Misc. 679, 273 N.Y.S. 87 (N.Y.Sup.1934); *Wheeler v. Aiken County Loan & Savings Bank*, 75 F. 781, 783 (C.C.S.C.1896).

Although it is true that AmeriFirst eventually will have to prove that Defendants' allegedly wrongful conduct in making specific loans caused new management to place the loans in a non-earning status or in a reserve against possible losses in order to hold Defendants liable for breach of fiduciary duty or negligence, *see, e.g., First National Bank of Lincolnwood v. Keller*, 318 F.Supp. 339, 348 (N.D.Ill.1970), the allegations of the Amended Complaint are sufficient to survive a motion to dismiss. AmeriFirst claims that the defendants engaged in a wide variety of culpable conduct regarding the origination, administration, modification and extension of loans.[17] Furthermore, AmeriFirst asserts that it suffered tremendous damages as a result of this alleged misconduct.[18] Although Plaintiff has not explicitly delineated which loans were improvidently made or how the allegedly imprudent lending practices specifically caused the making of these particular loans, a claim for breach of fiduciary duty or negligence need not be pled with particularity; allegations of improvident and reckless lending practices are "sufficiently precise to provide the defendant[s] with notice of the claims alleged." *Musacchio*, 695 F.Supp. at 1063–64.

### C. *Breach of Duty of Loyalty Claim as a Disguised Breach of Contract Claim*

■ Defendants Bomar, Garcia, Benner, and Hattler move to dismiss Count IV, contending that the breach of loyalty claim is a improper attempt to transform a contract claim into a tort claim. As Florida law does not permit a party to recover economic damages in tort without alleging tortious conduct separate and independent from a breach of contract, *AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So.2d 180, 181 (Fla.1987); *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899, 902 (Fla.1987), Defendants argue that the claim for breach of fiduciary duty must be dismissed as its allegations are based merely on Defendants' alleged breach of their employment contracts with AmeriFirst.

---

16. Amended Complaint paragraphs 143–50, 239–40, 243–245.

17. Amended Complaint paragraphs 15–18, 29, 38–140, 216.

18. Amended Complaint paragraphs 20, 35, 219, 235, 249.

Count IV alleges that Defendants acted wrongfully by accepting grossly excessive compensation in violation of federal regulations[19] and by actively concealing from the Compensation Committee and the Board of Directors the actual results of Defendants' stewardship of AmeriFirst. It is true that a contracting party may not sue in tort to recover solely economic damages without pleading tortious conduct which is separate from the alleged breach of contract. *AFM Corp.*, 515 So.2d at 181; *Florida Power & Light Co.*, 510 So.2d at 902. However, a corporate officer or director owes a duty of loyalty to his corporation which is independent of his contractual obligations arising out of the employment contract. *See, e.g. Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 264 (2d Cir.1984); *Panter v. Marshall Field & Co.*, 486 F.Supp. 1168, 1192 (N.D.Ill.1980), *aff'd*, 646 F.2d 271 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). Thus, AmeriFirst may maintain a cause of action in tort for the directors' breach of loyalty in addition to any breach of contract claim they may assert, since the Amended Complaint alleges separate tortious conduct.[20]

### D. *Punitive Damages*

Several Defendants argue that AmeriFirst has not adequately pled punitive damages pursuant to § 768.72 of the Florida Statutes as AmeriFirst has not made an evidentiary showing that such damages are appropriate and has not sought Court permission.[21]

This Court recently held in *Citron v. Armstrong World Indus., Inc.*, 721 F.Supp. 1259 (S.D.Fla.1989), that § 768.72 does not apply to state claims being litigated in federal court. As explained in that case, Fed.R.Civ.P. 9(g) must be applied in lieu of § 768.72, since the state statute is procedural in nature and directly conflicts with the federal rule. *Id.* at 1261. The rules conflict in that the Florida statute prohibits a claim for punitive damages unless evidence in the record or proffered by the plaintiff provides a reasonable basis for recovery, while the federal statute requires a plaintiff to specifically plead punitive damages in the complaint. *Id.* Moreover, the court noted in *Citron*, even if there were no conflict between the state and federal rules, there would be no injustice in applying the federal rule. " 'The only difference resulting from the state law's application is the time in the life of the lawsuit when the court determines whether the claim for punitive damages is appropriate,' a difference not material to the result of the litigation." *Id.* at 1262 (quoting *NAL II, Ltd. v. Tonkin*, 705 F.Supp. 522, 529 (D.Kan.1989). *See also Berry v. Eagle-Picher*, 1989 WL 77764, 1989 U.S. Dist. LEXIS 7671 (N.D.Ill. June 26, 1989). Consequently, Defendants' argument that the punitive damages claims should be dismissed pursuant to § 768.72 fails.

### E. *Benner's Motion to Dismiss Counts I and III*

In addition to joining in the motion to dismiss filed by Bomar and Garcia, Defendant Benner has filed a separate motion to dismiss those counts alleging Benner's breach of fiduciary duty, negligence and corporate waste (Counts I and III). In support of his motion, Benner contends that AmeriFirst's allegations that Benner made and administered improvident loans, mismanaged ADCO and failed to adequately reserve loans against losses fail to state

---

**19.** 12 C.F.R. 563.17(b).

**20.** Defendants argue, in addition, that since AmeriFirst's allegations of breach of fiduciary duty are based on Defendants' alleged violations of HOLA, under which there is no private cause of action, the claim must be dismissed. This argument misses the point. Plaintiff is not seeking damages under HOLA; rather, Plaintiff cites the alleged HOLA violations as evidence that Defendants breached their state common law breach of fiduciary duties.

**21.** Section 768.72 provides in pertinent part:

In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages.... No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

a claim for which relief can be granted, as Benner did not personally participate in any loan-making or loan-managing decisions or in establishing loan policies while he was Chief Financial Officer of Ameri-First.

The Court cannot accept Benner's arguments. The Amended Complaint expressly sets forth allegations that support the breach of duty, negligence and corporate waste claims. For example, AmeriFirst claims that Benner participated in the adoption of unlawful, imprudent lending practices [22] and unlawful, imprudent policies in the administration of loans.[23] The Amended Complaint further asserts that Benner unlawfully and recklessly failed to establish loan loss reserves with respect to loans which he knew AmeriFirst would suffer a loss.[24] In addition, AmeriFirst alleges that Benner engaged in deceitful practices to conceal the adverse consequences of the loan origination and administration practices,[25] as well as fraudulently reported AmeriFirst's financial condition.[26] Although Benner may not agree with the assertions made by AmeriFirst, the allegations, if true, clearly support claims entitling Plaintiff to relief.

### F. Conspiracy and Aider and Abetter Counts Against Carr

Defendant Carr moves to dismiss those claims alleging that he conspired in other Defendants' breach of fiduciary duties, arguing they are non-factual and conclusory and that he cannot be liable for conspiring to breach others' fiduciary duties when he was simply carrying out his own fiduciary obligation to his company by entering into favorable real estate deals. In addition, Carr asserts that even if he is charged with conspiracy, he is not liable for all of the damages resulting from other Defendants' primary breaches of duty, but only for the harm he himself caused. Finally, he argues that he cannot be liable for aiding and abetting a federal securities violation, as the Amended Complaint does not allege that Carr personally made any misrepresentations or omissions, does not plead justifiable reliance and does not demonstrate that he had a duty to disclose the fraud.

To begin with, Carr's argument that the allegations are nonfactual and conclusory is without merit. The Amended Complaint details that the Amerifirst and ADCO managers were involved in an illicit scheme to overstate profits, that Carr was aware of the scheme, and that he knowingly assisted in the plan.[27] Whether he knowingly purchased property on short notice cognizant of the managers' breaches of duty is a fact to be established at some later point in the proceedings. Moreover, Plaintiffs are correct in pointing out that just because Carr has a duty of loyalty to his own company does not give him free reign to contribute to the illegal acts of the officers of another company. Finally, Carr's argument that he can only be held liable for the damages caused by his specific acts under a conspiracy theory is directly contrary to well-established case law holding that all members of a civil conspiracy are liable for acts carried out in furtherance of that conspiracy. *See, e.g., Halberstam v. Welch*, 705 F.2d 472, 481 (D.C.Cir. 1983); *Fenslage v. Dawkins*, 629 F.2d 1107, 1110 (5th Cir.1980).

Carr cites *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.) *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), in support of his argument that he cannot be liable for aiding and abetting a state law breach of fiduciary duty. The court in *Cenco*, refusing to recognize such a cause of action, stated: "Anyone who would be guilty in a criminal

---

**22.** Amended Complaint paragraphs 37, 42, 44, 49, 90.

**23.** Amended Complaint paragraph 100.

**24.** Amended Complaint paragraphs 119b, 135.

**25.** Amended Complaint paragraphs 107, 110, 112.

**26.** Amended Complaint paragraphs 120, 143, 169.

**27.** Amended Complaint paragraphs 217, 261, 269, 294.

proceeding of aiding and abetting a fraud would be liable under tort law as a participant in the fraud, since aider and abetter liability requires participation in the criminal venture." *Id.* at 453.

■ Contrary to the holding in *Cenco,* the majority of case law, including that in Florida, recognizes a cause of action for aiding and abetting common law torts, such as breach of fiduciary duty. *See, e.g., Lou v. Belzberg,* 728 F.Supp. 1010, 1023–24 (S.D.N.Y.1990); *Morin v. Trupin,* 711 F.Supp. 97, 112 (S.D.N.Y.1989); *Repairman's Service Corp. v. Nat'l Intergroup, Inc.,* C.A. No. 7811, 1985 WL 11540, slip op. (LEXIS) at 10 (Del.Ch. March 15, 1985); *Terrydale Liquidating Trust v. Barness,* 611 F.Supp. 1006, 1015–16 (S.D.N.Y.1984); *Ft. Myers Development Corp. v. McWilliams Co.,* 97 Fla. 788, 122 So. 264, 268 (1929). In accordance with this line of authority, the Court holds that there is a claim for aiding and abetting the breach of a fiduciary duty when a plaintiff pleads four elements: (1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. *See Belzberg,* 728 F.Supp. at 1023; *Terrydale,* 611 F.Supp. at 1016. AmeriFirst has set forth allegations sufficient to meet this pleading requirement.

■ Finally, concerning the claim for aiding and abetting a Rule 10b–5 violation, the law in this Circuit holds that one may be liable for such violation if: "some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abetter knowingly and substantially assisted the violation." *Woodward v. Metro Bank of Dallas,* 522 F.2d

84, 94–95 (5th Cir.1975) (citation omitted). The Amended Complaint charges Defendants Bomar, Benner, Garcia, and Hattler with primary violations of Rule 10b–5.[28] It further charges that, being aware of these violations, Carr wrongfully assisted the other defendants in carrying them out.[29] Thus, Plaintiff adequately has pled a violation of aiding and abetting Rule 10b–5.

### G. *Cole's Motion to Dismiss Under Rule 12(b)(6)*

■ Defendant Cole asserts three arguments as to why Plaintiff's § 10(b) claim against him fails to state a cause of action. First, he argues that since AmeriFirst has not alleged sufficiently that he engaged in deceptive behavior, the allegations amount solely to a state law corporate mismanagement claim.[30] It is true that the law provides that if "the central thrust of a claim or series of claims arises from acts of corporate mismanagement, the claims are not cognizable under federal law." *Panter v. Marshall Field & Co.,* 646 F.2d 271, 289 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981) (quoting *Hundahl v. United Benefit Life Ins. Co.,* 465 F.Supp. 1349, 1365–66 (N.D.Tex.1979)). However, AmeriFirst's claims do not fall prey to this rule. Among other contentions, AmeriFirst alleges that Cole participated in a scheme to recklessly and imprudently sell ADCO properties solely for the purpose of manipulating AmeriFirst's reported profits and that Cole concealed this scheme from the Board of AmeriFirst and from AmeriFirst's shareholders.[31] These allegations of deception are sufficient to survive a Rule 12(b)(6) motion. *See, e.g., Klein v. King,* [1989–1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 95,-002 (N.D.Cal. Mar. 26, 1990), at 95,608, 1990 WL 61950; *First American Bank & Trust v. Frogel,* 726 F.Supp. 1292, 1296–97

---

**28.** Amended Complaint paragraphs 221–28.

**29.** Amended Complaint paragraphs 150–51, 229.

**30.** Cole also asserts that because the claims of his culpable conduct merely call into question his management decisions, they are shielded by the business judgement rule and therefore are

not assailable under Rule 10b–5. The Court rejects this argument for the same reasons stated above as to Defendants Bomar, Garcia, Benner and Hattler.

**31.** Amended Complaint paragraph 142, 149, 224(a), 225–28.

(S.D.Fla.1989); *Ballan v. Wilfred American Educational Corp.*, 720 F.Supp. 241, 250 (E.D.N.Y.1989).

Cole also argues that Plaintiff's allegations do not state a primary or secondary claim against him under § 10(b). As the Court finds that the Amended Complaint sufficiently pleads claims under both of these theories, the § 10(b) claim is not dismissed against Cole.

### H. *The Allegations of Fraud Under Fed.R.Civ.P. 9(b)*

▉ Several of the Defendants have moved to dismiss those portions of the Amended Complaint asserting common law fraud and misrepresentation, claiming that these allegations do not meet the pleading standards of Rule 9(b), Fed.R.Civ.P. Rule 9(b), as applied in this jurisdiction, requires a plaintiff to allege fraud with sufficient particularity to permit "the person charged with fraud ... [to] have a reasonable opportunity to answer the complaint and adequate information to frame a response." *In re U.S. Oil and Gas Litigation*, 1988 WL 28544, 1988 U.S. Dist. Lexis 2217, at 4 (S.D.Fla.1988). The allegations must be accompanied by "some delineation of the underlying acts and transactions which are asserted to constitute fraud." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Del Valle*, 528 F.Supp. 147, 149 (S.D.Fla. 1981).

▉ The Plaintiffs have plead fraud and misrepresentation with sufficient particularity to satisfy the Rule 9(b) standard. The factual allegations of the Amended Complaint discuss in lengthy and exacting detail the statements, omissions, acts and transactions of the Defendants which are allegedly fraudulent. For example, Plaintiff discusses the defendants' efforts at concealing AmeriFirst's expected loan losses, describing precise dates, loans and allegedly culpable actions.[32] In addition, AmeriFirst claims that Defendants manipulated and overstated the profits of ADCO and ultimately consolidated these figures with AmeriFirst's financial reports,[33] as well as participated in the release of false financial information and statements to the Board of AmeriFirst and the public.[34] Moreover, Plaintiff has described with particularity how it relied on the misstatements and omissions of Defendants to its detriment.[35] Finally, the Amended Complaint sets forth the damages allegedly caused by the fraud and misrepresentations, stating that they are estimated to exceed $75,000,000 and $10,000,000 respectively, and details exactly how Defendants' conduct caused these injuries.[36]

The Court finds that the other arguments for dismissal entertained by Defendants are without merit, and therefore, will not discuss them in detail. In light of the above discussion, it is hereby ORDERED and ADJUDGED as follows:

1. Defendants' motions to dismiss the Amended Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, are GRANTED as delineated heretofore in this Order as to Counts VI–IX, XI, XII, XX, and XXII and DENIED as to all other Counts.

2. Defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are DENIED.

3. Defendants' motions to dismiss pursuant to Rule 9(b) are DENIED.

---

**32.** Amended Complaint paragraphs 112–140.

**33.** Amended Complaint paragraphs 143–48.

**34.** Amended Complaint paragraphs 32, 33, 168–76.

**35.** Amended Complaint paragraphs 58–61, 70–78, 140, 146, 246.

**36.** Amended Complaint paragraphs 28, 35, 146, 167, 249, 282, 302.

Defendants Cole and Carr argue, in addition, that the allegations of fraud and misrepresenta-

tion against them are insufficient because they do not detail with sufficient particularity their individual roles in the fraud. I am not convinced by their arguments. AmeriFirst has described throughout its Amended Complaint the role these Defendants played in executing the allegedly fraudulent schemes and has explained that the end result of Defendants' actions was to conceal AmeriFirst losses and to overstate its earnings. *See, e.g.,* Amended Complaint paragraphs 141, 143, 144–48, 151, 165–66.

4. Defendants' motions to dismiss pursuant to Rule 25 of the Federal Rules of Civil Procedure are DENIED.

DONE and ORDERED.