Gregory McEWEN, Larry Parker, and Leonard Labiak, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DIGITRAN SYSTEMS, INC., et al, Defendants.

No. CIV.2:93CV728G.

United States District Court, D. Utah, Central Division.

May 21, 1999.

---

David Scofield and Patricia Bloodgood, Salt Lake City, UT, for plaintiffs.

Julian Jensen, Robert H. Jaffe & Associates, Salt Lake City, UT, for claimant.

## MEMORANDUM DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

J. THOMAS GREENE, District Judge.

This matter came for hearing before the court on January 26, 1999 and April 7, 1999 on Class Motion for Permission to Distribute Settlement Funds, and Motion to Certify Class Member's Claims filed by claimant Robert H. Jaffe, individually and as president of Robert H. Jaffe & Associates, ("Jaffe"). Class Plaintiffs were represented by David Scofield, and claimant Jaffe was represented by Julian Jensen.

Both motions have to do with distribution to the proper persons of funds which were generated by settlement of the captioned class action lawsuit. Counsel filed legal memoranda and other documentation pertinent to the motions prior to the hearing on January 26, 1999, and presented evidence and argument at the hearing. A further hearing was scheduled for April 9, 1999, to be preceded by the filing of supplemental briefs and materials, which was done. The court heard additional evidence at that hearing, and counsel presented final legal arguments after the conclusion of evidence. The matter was then submitted for decision and taken under advisement.

Now being fully advised, the court makes and enters its Findings of Fact, Conclusions of Law and Orders relative to both motions. The court also issues its Memorandum Decision denying certain aspects of claimant Jaffe's claims which are based upon purported assignments on behalf of original purchasers of the Digitran stock which was the subject matter of the class action lawsuit.

### FINDINGS OF FACT

1. This action was filed by certain purchasers of the stock of Digitran Systems, Inc. and Digitran, Inc. ("Digitran") on behalf of themselves and all others similarly situated, alleging violations of Section 11 of the Securities Act of 1933, Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, as well as violations of the Utah Uniform Securities Act and the common law.

2. By Order dated December 21, 1994, this Court certified the Plaintiff Class as "all purchasers of Digitran securities during the period from March 19, 1992 to May 21, 1993, inclusive." [1].

3. On October 24, 1996, a jury returned a verdict in favor of Class Plaintiffs and against Digitran and its former president, Donald Gallent, in the amount of $13,880,-517.00. The jury returned a verdict of no cause of action as to Grant Thornton, a national accounting firm which was a named defendant.

4. Defendants against whom judgment was entered were not able to respond financially, and bankruptcy ensued. Thereafter, the judgment was settled in connection with a plan to permit continued operation of the company and creation of a settlement fund for the benefit of injured class members. The Digitran Settlement Fund was created in May 1997, and this Court approved the settlement by Order entered on July 18, 1997.

5. Pending build up from operations of the settlement fund to the agreed upon level, distribution of monies to class plaintiffs was deferred for many months. The financial woes and forthcoming distribution became common knowledge, however, to those who were following the market, including Jaffe, concerning the once publicly traded and valuable Digitran stock. Details of the imminent distribution were set forth in a notice to the original purchasers and brokers.

6. Robert H. Jaffe, an attorney in New York state who does business through an entity solely owned and controlled by himself—Robert H. Jaffe & Associates—became aware of the planned distribution of

---

1. *McEwen v. Digitran Systems, Inc. et. al.,* 160 F.R.D. 631 (D.Utah 1994). (Discussion of the class certification order and other orders denying bifurcation and setting the basis for payment of attorneys fees and costs.)

funds soon to be made from the settlement fund to the original purchasers of Digitran who were members of the plaintiff class in the litigation. He saw an opportunity to acquire much of the rights and stock of Digitran at bargain prices. To this end he contacted brokers who had acquired and were holding Digitran stock for the benefit of their clients, and determined to obtain much of the stock and rights of the original class members by purchasing assignments from the brokers. When practicable, he obtained additional documents to support his purchase transactions from original purchasers.

7. Jaffe purchased the Digitran stock from Evergreen Funds, Granahan Investments, Nicholas–Applegate Capital Management, Wasatch Advisers, Inc., and various individuals. In each case, Jaffe paid consideration to each brokerage house, trader and individual from whom he purchased the stock and rights, in exchange for a release and assignment of all claims. The assignments to Jaffe purportedly transferred not only shares of stock, but the personal rights of the original purchasers to a proportionate share of the proceeds of the Digitran Settlement Fund. In this manner he obtained 826,483 shares of Digitran preferred and common stock. These shares of stock had been purchased by original class members for $5,992,321. Jaffe obtained the stock for less than ten percent of that figure.

8. Norwest Bank was designated by this Court to act as Claims Administrator and as such processed claims against the settlement fund. On July 23, 1997, it sent a court approved Notice, Proof of Claim and Release form to more than 800 potential class members and securities brokers, and required that all claims against the settlement fund were to be received on or before October 15, 1997. Over 500 claims were processed for approval or rejection in accordance with the terms of the aforesaid court approved proof of claim document. The Claims Administrator recommended that 116 claims be rejected for failure to qualify as a class member or failure to cure deficiencies in a claim. The Claims Administrator also recommended that one of eighteen late filed claims filed just prior to the April 7, 1999 hearing date, be rejected.

9. Jaffe learned of the claims process and made telephone calls to the Claims Administrator shortly after the October 15, 1997 deadline which had been set for filing claims. Jaffe was supplied a copy of the Notice, Proof of Claim and Release document by the Claims Administrator. Jaffe organized the shares of Digitran stock which he had obtained by assignments into five separate claims, and filed them against the settlement fund with the Claims Administrator in April and May of 1998. Jaffe averred in the claims thus submitted that he had acquired by assignments not only the stock but also the rights of original class members arising from violation of the securities laws as had been determined in the class action lawsuit.

10. Jaffe submitted the "the Granahan claim" to the Claims Administrator on April 29, 1998. This claim was based upon a collection of shares of common and preferred stock purchased from various sellers. This included 185,700 shares of Digitran common stock obtained from Granahan Investment Management on August 12, 1996, for which Jaffe paid approximately $.72 per share. Granahan Investment had acquired and was holding the Digitran stock in its own capacity, and not on behalf of any clients. The Executive Vice President, Jane White, and the President, John Granahan, each separately issued a release and assignment of all rights associated with the Digitran stock to Jaffe. In addition, 9,500 shares of Digitran common stock were obtained by Jaffe from various individuals who held the stock in their personal capacity[2]. Jaffe paid approximately $.72 per share for this stock. Also, 4,100 shares of Digitran preferred stock were obtained by Jaffe from various

---

**2.** Jennie Richie, John Richie, Merrily B. Birkenstein Trust, and Cheyne Walk Trust

individuals who held the stock in their personal capacity, each of whom separately granted to Jaffe a release and assignment of all rights to the Digitran stock[3]. Jaffe paid approximately $.40 per share for the said preferred stock.

11. Jaffe submitted the "the Nicholas–Applegate" claim to the Claims Administrator on May 14, 1998. This claim consisted of 220,800 shares of Digitran common stock which Jaffe purchased through Nicholas Applegate Capital Management on January 10, 1997. Jaffe paid approximately $.52 per share. The shares in question were held by Nicholas Applegate Capital Management for its clients who were the beneficial owners. The said brokerage house does not have or claim to have authority from its clients to assign legal claims associated with the purchase or sale or securities by such clients. Jaffe obtained a release and assignment from Nicholas–Applegate, but also sought out the clients of Nicholas Applegate who had purchased the Digitran stock during the class period. He received a release and assignment of rights from each,[4] except the State of Oregon.

12. Nicholas Applegate represented to Jaffe that the State of Oregon was one of the original purchasers of Digitran stock who had assigned its rights to Jaffe. Jaffe sought to obtain an additional assignment of the stock and rights directly from the State of Oregon, but was unsuccessful. Instead, a letter was filed with the Court prior to the April 7th hearing by the Attorney General of Oregon disclaiming any interest in the Digitran Settlement Fund. Notwithstanding, the State of Oregon had previously filed a claim with the Claims Administrator which complied with all requirements as the beneficial owner of the stock and rights, and was recommended for approval. The State of Oregon has never assigned such to Jaffe or anyone else.

13. Jaffe submitted the "Evergreen Funds" claim to the Claims Administrator on August 21, 1998. This claim consisted of 32,500 shares of Digitran common stock purchased by Jaffe from Evergreen Funds for approximately $.78 per share. Evergreen Funds in its own capacity holds and manages pooled securities for investors in a fund which consists of shares of many securities. Evergreen is authorized to buy and sell the individual securities for the fund. The Digitran securities which Jaffe purchased were one of the many securities pooled in an Evergreen fund. A representative thereof, Edwin Miska, Vice President of Investments, delivered to Jaffe a signed release and assignment of Digitran stock and all rights which might be asserted against the Digitran settlement fund.

14. Wasatch Advisors, Inc. and Wasatch Funds, Inc. ("Wasatch") hold and manage pooled securities in funds known as Wasatch Growth Fund and Wasatch Aggressive Equity Fund. Like Evergreen Funds, Wasatch is fully authorized to buy and sell securities within these funds. The Digitran stock held in those funds was transferred to Jaffe and such funds submitted to Jaffe a release and assignment of rights relative thereto.

15. Two of the five claims presented by Jaffe were derived from an assignment to Jaffe from Wasatch of 373,883 of shares of Digitran preferred and common stock which were held in individual accounts of clients who as original purchasers were the beneficial owners thereof.

One of the aforesaid Wasatch claims was submitted to the Claims Administrator on April 28, 1998. This claim consisted of 83,333 shares of Digitran preferred stock purchased by Jaffe through Wasatch Advisers, Inc. on August 8, 1997. Jaffe paid approximately $1.50 per share for the preferred shares. The second Wasatch claim was submitted to the Claims Administrator on May 6, 1998. That claim consisted of

---

3. Janet B. Johnson Trust, Ralph Bard Sr. Trust, John Richie

4. Howard Hughes Medical, Textronix INCC, University of Minnesota, Yale Mini–Cap, Bombardier Emerging, Schwann Sales Ent.

290,550 shares of Digitran common stock purchased by Jaffe through Wasatch Advisers, Inc. on March 19, 1997, for approximately $.52 per share.

16. The President of Wasatch Advisers, Inc., Samuel S. Stewart, issued to Jaffe a purported release and assignment of all rights associated with both the preferred and common shares of Digitran stock. As the basis for its claimed authorization to assign the Digitran shares and the rights of original purchasers in and to the settlement fund, Wasatch provided an "Investment Advisory Agreement" and a "Trading Authorization" which had been executed by Wasatch and its clients when trading accounts were opened. The "Investment Advisory Agreement" recites that "Wasatch Advisors shall have full power to supervise and direct the investment of the Account, making and implementing investment decisions all without consultation with Client . . ." The "Trading Authorization" provides "authority to buy, sell and trade in securities . . . And to do all acts . . . necessary or incidental thereto". On the basis of these documents, Wasatch transferred and sold to Jaffe the Digitran stock and rights to the settlement fund, and delivered to Jaffe a release and assignment relative thereto. Jaffe relied entirely on the authority of Wasatch to assign to him the stock and class action lawsuit rights based upon account agreements which clients of Wasatch had executed upon opening a trading account with that broker.

17. Wasatch in its own capacity did not qualify as a class member,[5] and was never specifically authorized by its clients who were class members to assign their claims in and to the settlement fund to Jaffe. Neither Wasatch nor Jaffe contacted the original purchasers—class members of the Digitran stock to verify an express intent to assign rights associated with the Digitran settlement fund.[6] Neither Wasatch nor Jaffe had obtained specific assignments of the rights of these purchasers-class plaintiffs in and to the Digitran settlement fund.

18. The assignments from Wasatch to Jaffe do not comport with the requirements set forth in the Notice of Class Action Settlement and Claims Procedure dated July 23, 1997. That document requires that each claimant must produce proof that the underlying stock transaction took place within the class period. Jaffe failed to provide either the Claims Administrator or the court with confirmation slips or any other proof that the stock was purchased between the operative dates. The document also requires that a signature of each beneficial owner must be produced with each claim so as to indicate the rightful owner's intention of collecting against the settlement fund. By providing his signature on the claim, the claimant represents that he "is a member of the Class certified by the Court in this manner . . .[7]" Jaffe rather than the beneficial owners and/or class members signed the Was-

5. In a memorandum filed by Jaffe in support of Motion to Certify his claims, Wasatch is referred to as "a putative class member." However, neither Wasatch nor Jaffe meet the requirements of a class member as set forth in the Notice, Proof of Claim and Release Form dated July 23, 1997.

6. One of the reasons asserted by the Claims Administrator for rejection of Jaffe's Wasatch claims was failure of Jaffe to provide evidence that the purported assignments from Wasatch were not duplicative of claims which may have been filed by original purchasers whose stock had been acquired through Wasatch as a broker. At the hearing on April 7, 1999, the Claims Administrator submitted evidence that

at least six Wasatch clients had in fact submitted claims which were duplicative. In a letter dated May 12, 1999, to the court from legal counsel for Jaffe, the court was advised that "efforts are well underway" by Jaffe to obtain direct assignments from those six persons. Such documentation, even if submitted, would be untimely and beyond the April 7, 1999 deadline. Jaffe's claim is invalid as to those six claims because of duplicativeness, as well as for the other reasons set forth herein concerning the invalidity of Jaffe's Wasatch claims.

7. Language taken from Jaffe's Proof of Claim and Release Form submitted to the Claims Administrator.

atch claims and submitted them to the Claims Administrator.

19. Jaffe received notice from Norwest Bank that his claims were recommended for rejection for several reasons, whereupon Jaffe filed a motion to have his claims certified for payment by the court. Thereafter, prior to the court hearings, Jaffe communicated frequently via telephone and mail with representatives of the Claims Administrator concerning the defects which the Claims Administrator had found to exist in the Wasatch claims. Irrespective of these communications, Jaffe failed to cure such defects concerning the Wasatch claims at any point during these proceedings. Jaffe and all other persons whose claims had been recommended for rejection by the Claims Administrator were permitted to present further documentation concerning their claims prior to and at the hearings in January and April 1999. The court by prior order established April 7, 1999 as the time for submission of further documentation in support of objections by claimants to recommendations of rejection by the Claims Administrator. The motion of the Claims Administrator to fix that date retroactively as the deadline for submission of claims should be granted.

20. During the April 7, 1999 hearing, the court inquired whether any other claimant was present and wished to be heard in order to respond to the rejection of her claim, or otherwise. No one appeared or requested to be heard other than Mr. Jaffe. However, the Claims Administrator presented in open court 18 oral and written responses by class members which had been submitted just prior to April 7, 1999, concerning the rejection of claims. The Claims Administrator provid-

ed the court with an explanation and recommendation concerning each such claim. The Claims Administrator recommended approval of all but one of the claims, namely the claim of Katherine Robar, which was recommended for rejection because Ms. Robar does not qualify as a class member.

21. Class Plaintiffs in their Motion for Permission to Distribute the Settlement Fund, which was fully aired at the January 26, 1999 and April 7, 1999 hearings, sought authorization from the court: (a) to pay from the Settlement Fund all valid claims filed, less $5,000.00 to cover the Fund's tax liability and any unforeseen expenses; (b) to retroactively extend the filing deadline of Claim Registration forms to April 7, 1999 so that no claim need be rejected solely for untimeliness; (c) to confirm Digitran's obligation to pay the expenses of the Fund, as stated in the Settlement Administration Agreement; and (d) to donate any settlement funds remaining one year after distribution to a charitable organization.

22. This court has previously approved payment of attorneys expenses for all counsel representing class plaintiffs and such have been fully paid. No other attorneys fees or expenses from the settlement fund were sought by class plaintiff's counsel[8].

At the hearing on January 26, 1999, this court directed counsel for class plaintiffs to prepare legal memoranda and submit further documentation bearing upon the validity or invalidity of the Jaffe claims. This was done. The court has reviewed the requests for further attorney payments in connection therewith by Patricia Bloodgood and attorneys and others associated with her, and by David Scofield, and

---

8. In the Notice, Proof of Claim and Release document dated July 23, 1998, the following is set forth: "III. *Attorneys' Expenses* Any fees and expenses of the Plaintiff Class attorneys will be determined by the Court and paid out of the Settlement Fund. The Plaintiff Class attorneys intend to apply to the Court for reimbursement of legal expenses in the amount of $400,000.00. This amount is less than the out of pocket expenses incurred by the Plaintiff Class attorneys in prosecuting this litigation. Plaintiffs' counsel are not seeking any payment for any of the attorneys' fees which they have incurred. Subsequent fees and expenses for administering the settlement and claims program will be paid by Digitran, Inc. and Digitran Systems"

finds that payment for what was directed by the court in the maximum amount of $5,000 would be reasonable, to include legal services, costs and expenses between the period January 26, 1999 and April 7, 1999. Payment of $5,000 as aforesaid shall be made by Digitran, fifty percent to Ms. Bloodgood et al. and fifty percent to Mr. Scofield et al.

23. All other fees and expenses of the Claims Administrator shall be submitted to and paid by Digitran[9], except costs directly related to the processing of the Jaffe claims. Those fees and expenses should be borne by Jaffe, giving full credit for the $6,500 payment he has already made. Any overage should be remitted to Jaffe.

24. The Claims Administrator should submit to the court an accounting of funds which have been placed in the settlement fund, plus interest and funds which have been paid out of the settlement fund.

## CONCLUSIONS OF LAW

■ 1. The deadline for filing claims against the settlement fund is retroactively extended to April 7, 1999 to prevent exclusion of any claim on the sole basis of being untimely filed up to that date. This extension of time for the filing of claims does not waive or extinguish any defects or other grounds for rejection of claims. No further or other claims may be filed after April 7, 1999.

2. The requirements necessary to be met for certification of claims by the Claims Administrator and approval by the court are set forth in the Notice, Proof of Claim, & Release document as approved by this Court. All persons whose claims were recommended for rejection by the Claims Administrator were permitted to present further documentation at or before the hearing on April 7, 1999. No further documentation in support of claims may be filed after that date.

3. Only purchasers of Digitran stock between March 19, 1992 and May 21, 1993

are class members of the Digitran lawsuit, and as such are the exclusive beneficial holders of claims against the Digitran Settlement Fund.

■ 4. Rights arising from litigation based upon violation of the securities laws are personal rights in favor of purchasers of stock who were injured as a result of fraudulent activity. Accordingly, Rule 10(b)(5) claims, such as those asserted by the class plaintiffs in this litigation, are personal to the original purchasers, the persons actually defrauded. Absent a voluntary and express assignment of such claims by the injured party, an assignee does not become the beneficial holder of such claims. This rule applies not only to unliquidated claims, but also to claims for the receipt of money damages after the amount of the claim is determined by judgment or otherwise.

■ 5. The "Evergreen Funds" claim submitted by claimant Jaffe satisfies all requirements set forth in the Notice, Proof of Claim, and Release document. Evergreen Funds, Inc. was duly authorized to make and deliver an assignment to Jaffe of all rights and claims held by Evergreen Funds in the Digitran settlement fund. By way of assignment, Jaffe became the beneficial holder of all claims associated with the "Evergreen Fund" claim.

6. The "Granahan" claim submitted by claimant Jaffe satisfies all requirements set forth in the Notice, Proof of Claim and Release document. All original purchasers of Digitran stock as set forth in this claim are class members and have individually issued valid assignments of rights against the Digitran settlement fund. By way of assignment, Jaffe became the beneficial holder of all claims associated with the "Granahan" claim.

7. Save for a portion allegedly owned by the State of Oregon, Jaffe's Nicholas–Applegate claim satisfies all requirements set forth in the Notice, Proof of Claim, & Release document. All other original pur-

---

9. *See supra* note 8.

chasers of Digitran stock who held their shares through Nicholas–Applegate are class members and have individually issued valid assignments of right to the settlement fund. By way of assignment, Jaffe became the beneficial holder of all rights within the Nicholas–Applegate claim, save for those associated with the State of Oregon.

8. Jaffe's rights allegedly acquired from the State of Oregon which are contained in the Nicholas–Applegate claims are not approved and are rejected. The assignment by Nicholas–Applegate to Jaffe of such rights is ineffective and nonbinding. The State of Oregon was an original purchaser and was the beneficial owner of the Digitran stock and litigation rights. The Claims Administrator properly regarded the State of Oregon as such and recommended the claim for approval. The disclaimer of interest presented by the duly authorized representative of the State of Oregon was ineffectual to transfer the stock or rights to Jaffe.

9. The requirements set forth in the Notice, Proof of Claim and Release have been met with respect to the shares and rights owned by the Wasatch Growth Fund and Wasatch Aggressive Equity Fund, submitted to the Claims Administrator through the "Wasatch claim." Wasatch Advisers, Inc. and Wasatch Funds, Inc. have authority to buy and sell securities and their accompanying rights on behalf of these funds without prior authorization from its clients. Acting in this capacity, Wasatch was duly authorized to assign the stock and rights held by the funds. By way of assignment, Jaffe became the beneficial holder of the rights in and associated with Digitran stock within the said Wasatch funds.

10. The assignments to Jaffe from Wasatch purportedly on behalf of beneficial owners concerning Digitran preferred stock (Wasatch Claim One) and Digitran common stock (Wasatch Claim Two), do not comport with the requirements set forth in the Notice, Proof of Claims and Release, and are otherwise invalid and ineffectual.

11. The assignments to Jaffe from Wasatch are invalid and ineffectual because Jaffe did not receive voluntary and express assignments from the beneficial owners of the Digitran stock, or individual express releases of rights associated with the Digitran settlement fund. Since Jaffe did not present evidence of class members' express intent to assign their litigation rights, or to authorize Wasatch to assign such rights on their behalf, the court rules that the assignments by Wasatch to Jaffe on behalf of its class member clients are invalid.

12. The assignments to Jaffe from Wasatch are invalid and ineffectual because they go beyond the scope of what rights Wasatch was authorized to assign without direct and express authorization from its clients who were Class members. Although a representative of Wasatch provided an assignment to Jaffe of its' class member-clients' rights, Wasatch is not a class member and its assignment to Jaffe was ultra vires. Wasatch's and Jaffe's reliance on the "Investment Advisory Agreement" and the "Trading Authorization" is misplaced. These documents merely grant to Wasatch the authority to buy, sell and trade in clients accounts without prior consultation. Those documents do not grant authority to Wasatch to transfer or assign the personal rights of its clients in and to funds derived from securities litigation.

13. Jaffe was not an original purchaser, beneficial owner or member of the class certified by the court as concerns and relates to the Wasatch claims.

14. All claims which the Claims Administrator recommended for approval have satisfied the requirements set forth in the Notice, Proof of Claim and Release document issued by this Court.

15. Objections by eighteen holders of claims which had been rejected by the Claims Administrator as untimely filed

were presented to the Court on or before April 7, 1999. Of those, seventeen satisfy the requirements set out in the Notice, Proof of Claim and Release document; and one of the said eighteen claims, namely the claim of Katherine Robar, does not satisfy the requirements because Ms. Robar does not qualify as a class member.

16. The 116 claims which are identified in Exhibit D of the LeClair affidavit dated March 16, 1999 and filed with the court do not meet the requirements established in the Notice, Proof of Claim and Release document and otherwise should be rejected for the reasons established in the said affidavit.

17. Class Plaintiff's motion to distribute settlement funds should be granted as to all claims herein declared to be valid claims, including the State of Oregon's claim, the six claims submitted by class members who were clients of Wasatch, and the Jaffe claims herein certified for payment. Accordingly, the Claims Administrator is authorized to pay all claims filed against the Fund, herein determined to be valid, less $5,000.00 to cover the Fund's tax liability and any unforeseen expenses. Any remaining balance of the said $5,000.00 shall be distributed to charity after one year from this date.

18. Digitran shall make payment of all past and subsequent fees and expenses for administering the settlement and claims program, and Digitran shall pay counsel for class plaintiffs the sum of $5,000 for further attorney's fees and expenses in-

curred during the period January 26, 1999 and April 7, 1999.

19. The Claims Administrator shall prepare an accounting and make distribution to persons entitled thereto from the settlement fund.

### Memorandum Decision

The principal focus of this memorandum is the validity of the Jaffe Wasatch claims. The claims in question were assigned to Jaffe by Wasatch as stock broker, purportedly transferring to Jaffe the rights of original purchasers which were derived from the class action securities litigation. This court rejects Jaffe's Wasatch claims and holds that the assignments by Wasatch to Jaffe of the rights of the original purchasers arising from the securities litigation were invalid and ineffectual for the following reasons:

1. *Failure to Comply With Requirements for Certification by Claims Administrator*

The assignments from Wasatch to Jaffe do not comport with the guidelines established in the Notice of Class Action Settlement and Claims Procedure dated July 23, 1997. Among other requirements therein, each claimant was to produce proof that the underlying stock transaction took place within the class period, and each beneficial owner was to execute each claim to indicate the rightful owner's intention of collecting against the settlement fund.[10] These requirements were not met. The

---

**10.** The Notice, Proof of Claim and Release says in relevant part, "PLEASE NOTE THAT TO BE A MEMBER OF THE CLASS YOU MUST HAVE PURCHASED DIGITRAN SECURITIES BETWEEN MARCH 19, 1992 AND MAY 21, 1993 ... *Instructions For Filling Out Proof of Claim and Release* I. *Identity of Claimant(s)/Beneficial Owner(s):* The Proof of Claim and Release form (the "Form") must be filled in with the name or names of the actual beneficial owner or owners of the shares upon which the claim is based ... III. *Information Regarding Shares Owned During the Class Period B. Purchases / Acquisitions Between March 19, 1992 and May 21, 1993* Write the information regarding PUR-

CHASES AND ACQUISITIONS during the Class Period accurately and completely ....IMPORTANT—For EACH acquisition listed, you *MUST* attach proof of the transaction to the Form. FAILURE TO PROVIDE SUPPORTING DOCUMENTATION OR TO REPORT ALL OF YOUR TRANSACTIONS MAY PREVENT YOU FROM RECEIVING ANY DISTRIBUTION UNDER THE SETTLEMENT."

In addition to the foregoing, all claimants were required by the terms of the claim document submitted to the Claims Administrator to represent and certify that he or she is a "member of the class certified by the court."

Wasatch claims were signed by Jaffe, but he failed to establish that the assignments transferred to him the rights of the beneficial owners of the stock in the settlement fund. Jaffe also failed to provide either the Claims Administrator or the court with confirmation slips or any other proof that the stock was purchased between the operative dates.

Although the Claims Administrator and Jaffe communicated frequently via telephone and mail to discuss defects in the Wasatch claims, which the Claims Administrator had called to his attention, Jaffe failed to cure such defects at any time during these proceedings. To ensure that all beneficial owners received notice of their rights against the settlement fund, the Claims Administrator gave notice to brokerage firms and other class member nominees that each original purchaser must be informed of her rights in the settlement fund. Jaffe was aware of such notice, but did not contact or cause the broker to contact the original purchasers. Jaffe also had notice by reason of his receipt of the Notice, Proof of Claim and Release document that brokers were also required to provide to the Claims Administrator a list of names and addresses of the original purchasers (or to make direct contact) but failed to take action to facilitate that requirement.

The Claims Administrator repeatedly requested Jaffe to submit documentation that the original purchasers of Digitran stock had not filed duplicative claims. Just before the April 7th hearing Jaffe finally submitted for the first time information concerning the identity of original purchasers who were clients of Wasatch. However, at that hearing it became apparent that at least six of the said original purchasers-class plaintiffs had filed duplicative claims with the Claims Administrator. Jaffe's claims as to those six claims are also invalid because they are duplicative [11].

## 2. Assignments Were Ultra Vires and Unauthorized

Wasatch as well as Jaffe apparently believed that Wasatch had absolute authority to act on its clients' behalf and to sell their rights arising from the class action litigation without any specific authorization from the original purchasers to do so. For whatever reason, Wasatch did not contact its clients regarding their rights in and to the settlement fund. Samuel S. Stewart, acting on behalf of Wasatch as its president, not only sold and assigned to Jaffe the Digitran stock owned by class member-clients of Wasatch, but also purported to sell and assign to Jaffe the underlying rights of those original purchasers without obtaining their prior consent. Jaffe failed to contact the class members-beneficial owners and has not provided any direct assignment or adequate authorization from the class members. Wasatch in its own capacity does not qualify as a class member, and was never specifically authorized by its clients who were class members to assign their claims in and to the settlement fund to Jaffe or anyone else.

At the January 26th hearing, the court made clear that it would approve the assignments to Jaffe only if Jaffe provides documentation at the subsequent hearing demonstrating that original class members specifically and knowingly intended to assign their rights to Jaffe, or to provide evidence that those class members had specifically authorized Wasatch to act on their behalf in this regard. At the final hearing on April 7, 1999, Jaffe provided to the court an "Investment Advisory Agreement" and a "Trading Authorization," executed by Wasatch Advisors, Inc., and allegedly its clients who were class members. However, these documents fall short of the required proof that the class member-purchasers had specifically released or transferred their rights

11. Several class members whose Digitran stock was acquired through Wasatch as trader in fact asserted their personal rights which arose from the securities litigation by filing

their own claims against the settlement fund. These claims were duplications of the purported assignment by Wasatch. See supra note 6.

in the lawsuit. The "Investment Advisory Agreement" recites only that "Wasatch Advisors shall have full power to supervise and direct the investment of the Account, making and implementing investment decisions all without consultation with Client ..." The "Trading Authorization" only provides "authority to buy, sell and trade in securities ... and to do all acts ... necessary or incidental thereto." Jaffe called a witness affiliated with Wasatch who testified that Wasatch had made a determination—without consultation with any class members—that these documents are broad enough to enable Wasatch to sell whatever rights its clients had in proceeds from settlement of the class action litigation without any further authorization. Jaffe relies on these documents as authorizing Wasatch not only to sell securities of class members deposited with a custodian but also to sell and transfer to him the personal rights of class members in and to funds held for the benefit of class members, which funds were derived from settlement of the class action lawsuit.

This court rules that the aforesaid documents do not qualify as authorizations to sell, transfer or release rights which original purchasers of the Digitran stock had as beneficial owners of proceeds derived from settlement of the class action litigation. No such authority was given to Wasatch by class members expressly, and no such authorization could reasonably be implied from the documents. The documents Wasatch obtained from its clients are only authorizations to buy and sell securities.

3. *Assignments of Personal Rights Acquired Through Litigation Require Specific Authorization From Beneficial Owners*

Class plaintiffs who acquired Digitran stock through Wasatch as stock broker did not specifically assign their litigation rights to Wasatch or Jaffe. There was no purposeful, informed release or assignment by such beneficial owners or any other evidence of informed and purposeful intention to transfer and/or release.

Under the general philosophy of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), a plaintiff must have been a purchaser or seller and must have been personally defrauded to have standing to assert a § 10(b) securities violation claim. The majority of courts consider that federal securities claims asserted under § 10(b) are not automatically assignable. See discussion of cases in *AmeriFirst Bank v. Bomar* 757 F.Supp. 1365 (1991). Judge Hoeveller, in *AmeriFirst*, ruled that an assignment of such rights could be recognized, provided that it could be shown with clarity that the class members in question intended to so assign. Indication of such clear and express intention is missing here. The court said:

> Because a § 10(b) claim is personal to the one actually defrauded, these courts have found it inappropriate to permit a claim to travel with the security. As stated by the court in In re Saxon, a rule recognizing automatic assignment would remove the remedy from those to whom the statute provides it by gratuitously giving it to those who were not defrauded and have suffered no injury under the securities law. The concern of depriving an injured party of the right to seek a remedy does not arise, however, when the party *voluntarily and expressly* assigns the securities claim to another. In this situation, the victim of fraud *willingly relinquishes his statutory cause of action.* Thus, unless the assignment of a Rule 10b–5 claim otherwise contravenes the policy considerations behind the standing requirements of Blue Chip and its progeny, there is no reason why a party who has been injured by the purchase or sale of a security in violation of Rule 10b–5 should not be entitled to expressly assign his claim in accordance with the general rule that claims are legally assignable.

*Id.* at 1371 (citations omitted and emphasis added).

At the January 26, 1999 hearing this court called the above case to the attention of counsel. Further, this court indicated that any purported assignments from Wasatch to Jaffe likely would be rejected by the court in the absence of clear and direct evidence to demonstrate purposeful and informed release and assignment by the class member-purchasers of their personal rights derived from the class action litigation. Such has never been provided.

Jaffe argues that where as here the right to a proportionate share of funds has been reduced to a general damage figure, there should be no impediment based on lack of standing to sue or the personal nature of rights because of being personally defrauded. In this regard, Jaffe relies upon *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1234 (10th Cir.1988) wherein the Tenth Circuit stated:

> The law draws a distinction between the right to assign performance under a contract and the right to receive damages for its breach. Whether the damages are contractual in nature, or arise from a federal [securities] statute, seems to us to be immaterial.[12]

Contrary to the facts in this case, there was no claim in *Touche Ross* that the assignment was made by an unauthorized assignor, without the knowledge or approval of the person owning the underlying rights, that the assignment was ultra vires or not made with clear intention to assign the rights in question.

■ An assignment of rights to a § 10(b) claim must be expressly made by the person owning the underlying rights, and shown to have been voluntarily and intentionally made. This court considers that this requirement applies with equal force to rights which are reduced to a liquidated money damage figure. Both § 10(b) unliquidated claims and liquidated amounts derived from § 10(b) claims are personal to the persons defrauded under the securities law. Transfer of such personal rights to those who have suffered no injury would be in contravention of the policies underlying *Blue Chip*. Accordingly, this court holds that purported assignments and transfers of such rights are invalid in the absence of informed, express and intentional assignment by the original purchasers as beneficial owners thereof, or other unequivocal evidence of intent to transfer.

Based upon the foregoing Findings, Conclusions, and Memorandum Decision, the court now makes and enters orders responsive to the motions before the court, as follows:

### MOTION FOR CERTIFICATION OF CLAIMS ASSERTED BY CLAIMANT JAFFE

It is hereby

ORDERED, that the "Evergreen Funds" claim and the "Granahan" claim submitted by claimant Jaffe are each approved and certified for payment in their entirety; it is

FURTHER ORDERED, that the "Nicholas–Applegate" claim submitted by claimant Jaffe is certified and approved, except as to the shares received through a purported assignment on behalf of the State of Oregon. That part of Jaffe's "Nicholas–Applegate" claim is not approved and is rejected; it is

FURTHER ORDERED, that the claim submitted to the Claims Administrator by the State of Oregon as claimant is approved and certified for payment in its entirety, it is

FURTHER ORDERED, that the claim submitted by claimant Jaffe based upon transfer from stock funds designated as the Wasatch Growth Fund and the Was-

---

12. In *Touche Ross,* the Tenth Circuit held that the sale of all of a corporation's stock in connection with the sale of the business constituted a sale of securities. The court reasoned that a contract term in the purchase agreement which prohibited assignment of rights "under and in connection with" the agreement did not forbid assignment of the right to money damages for breach of that contract.

atch Aggressive Equity Fund, are approved and certified for payment; it is

FURTHER ORDERED, that the remaining Wasatch claims purportedly assigned to claimant Jaffe by Wasatch on behalf of class members who purchased Digitran stock are not approved or certified, and are hereby rejected in their entirety.

## MOTION OF CLASS PLAINTIFFS TO DISTRIBUTE SETTLEMENT FUND

It is hereby

ORDERED, that the deadline for filing claims is extended retroactively to April 7, 1999, and the deadline for filing documentation concerning claims recommended for rejection by the Claims Administrator was and is extended to April 7, 1999. No further claim or documentation may be filed after April 7, 1999. The intent of so extending the filing deadline is to prevent exclusion of any claim on the sole basis of being untimely filed so long as there was a filing by April 7, 1999. No other requirements set forth by the Claims Administrator in the Notice to File Proof of Claim and Release, dated July 23, 1997, and no defects in any claims filed, are excused or waived; it is

FURTHER ORDERED, that all claims which the Claims Administrator approved on or before April 7, 1999 are approved and certified for payment by the court, including the State of Oregon's claim, the six claims submitted by class members who were clients of Wasatch, and the Jaffe claims herein certified for payment; it is

FURTHER ORDERED, that 17 of the 18 claims which had been previously rejected by the Claims Administrator as being untimely filed, and as to which objections to the rejection of such claims were submitted on or prior to April 7, 1999, are approved and certified for payment; it is

FURTHER ORDERED, that one of the said 18 claims, namely the claim of Katherine Robar, is not approved or certified by the court in that Ms. Robar does not qualify as a class member; it is

FURTHER ORDERED, that the 116 claims which are identified in Exhibit D of the LeClair affidavit dated March 16, 1999 and filed with the court are not approved and are rejected, as recommended by the Claims Administrator, for the reasons stated in the said affidavit; it is

FURTHER ORDERED, that the Claims Administrator forthwith shall make and submit to the court an accounting of funds which have been placed in the settlement fund, plus interest, as well as funds which have been paid out of the settlement fund, together with a list of persons designated to be paid and corresponding amounts. Contemporaneously with the filing of such list and accounting, the Claims Administrator without further order of court forthwith shall pay all valid claims filed against the Fund, less $5,000.00 to cover the Fund's tax liability and any unforeseen expenses. If after one year from the date of this order a balance remains in the said reserve account of $5,000.00, the Claims Administrator is authorized to distribute the balance to charity.

## FEES AND COSTS

It is hereby

ORDERED, that all fees, costs and expenses incurred by the Claims Administrator in relation to the Jaffe claims shall be paid by Mr. Jaffe giving him credit for the amount of $6,500.00, which was advanced to the Claims Administrator for the processing of such claims by Jaffe. The Claims Administrator shall account to Jaffe for hours actually spent and remit the balance of the $6,500.00, if any, to him. The accounting shall exclude travel time and any time spent at the January 26th and April 7th hearings by agents of the Claims Administrator, and attorneys fees; it is

FURTHER ORDERED, that all fees, costs and expenses incurred by the Claims Administrator relating to the administration of the settlement fund, including the processing of claims submitted by claimants other than Jaffe, shall be paid by

Digitran Systems Inc. This shall include amounts set forth in the LeClair affidavit (Exh. H), which accounts for administration expenses through March 16, 1999 in the amount of $28,532.16, plus amounts incurred subsequently; it is

FURTHER ORDERED, that attorneys fees, costs and expenses in the amount of $5,000.00 incurred by counsel for the class plaintiffs between January 26, 1999 and April 7, 1999 performed at the direction of the court shall be paid by Digitran, fifty percent to Ms. Bloodgood et. al. and fifty percent to Mr. Scofield, et. al.